Filed 3/30/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEON DAVIS,<br><br>    Defendant and Appellant. | A143916<br><br>(Alameda County<br>Super. Ct. No. 173765) |

In early 2014, defendant Leon Davis pleaded no contest to a felony charge of simple possession of methamphetamine and was placed on probation. While defendant was still on probation for the conviction, the passage of Proposition 47, the Safe Neighborhoods and Schools Act, reduced simple possession and several other nonviolent crimes to misdemeanors and authorized persons "currently serving a sentence" for a felony conviction for such crimes to petition for a recall of sentence.

Proposition 47 places one condition on such resentencings: while the conviction is reduced to a misdemeanor, the petitioner continues to be subject to the ban on firearms possession applicable to felons. Apparently to avoid this condition, defendant contended at the time of his resentencing that he was not eligible for a recall of sentence under Proposition 47 because, as a probationer, he was not "currently serving a sentence." Instead, he urged the trial court to resentence him under the doctrine of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), which holds that, in the absence of contrary legislative intent, statutory amendments mitigating criminal punishment are to be applied retroactively. The trial court rejected the argument and required defendant to file a Proposition 47 petition. Under protest, defendant filed the petition, and his sentence was recalled.

On appeal, defendant repeats the argument he is entitled to an unconditional reduction of his felony conviction to a misdemeanor under *Estrada*. Because we conclude that persons on probation for a felony conviction are "currently serving a sentence" for purposes of Proposition 47, we affirm the judgment of the trial court.

## I. BACKGROUND

Defendant was charged in a complaint, filed on March 27, 2014, with possession for sale of methamphetamine. (Health & Saf. Code, § 11378.) On April 8, 2014, he pleaded no contest to a felony charge of simple possession under subdivision (a) of Health and Safety Code section 11377. The court suspended imposition of sentence and placed defendant on five years' probation. Six months later, the district attorney petitioned for the revocation of defendant's probation on grounds he had again possessed a controlled substance, in violation of the terms of his probation.

By the time defendant appeared for hearing on his probation violation in November 2014, the electorate had passed Proposition 47. Among other changes to California criminal law, Proposition 47 reduced a violation of Health and Safety Code section 11377, subdivision (a) to a misdemeanor. Under Penal Code[1] section 1170.18, also enacted by Proposition 47, any person "currently serving a sentence" for a crime that was reduced from a felony to a misdemeanor by the proposition is entitled to petition for a recall of sentence. (§ 1170.18, subd. (a).) Upon receipt of such a petition, the trial court is required to reduce the defendant's conviction to a misdemeanor and resentence him or her under the amended statute, unless the court determines the change would pose an unreasonable risk to public safety. (§ 1170.18, subd. (b).)

Reduction of a felony conviction to a misdemeanor under section 1170.18 comes with one caveat. A conviction recalled under the section is to be considered a misdemeanor "for all purposes," except following resentencing, the now-misdemeanant

---

[1] All subsequent statutory references are to the Penal Code unless otherwise indicated.

2

continues to be barred from possessing firearms, just as a felon would be. (§ 1170.18, subd. (k).)

At the hearing, defendant's attorney requested that defendant's conviction be reduced to a misdemeanor, consistent with Proposition 47's amendment of Health and Safety Code section 11377. Because defendant had been placed on probation, however, counsel argued defendant was not "currently serving a sentence" for his conviction, as required for the filing of a petition for recall under section 1170.18. Rather, counsel requested the reduction in defendant's conviction under the retroactivity principle of *Estrada*.[2] At a sidebar conference, the trial court insisted defendant was required to file a section 1170.18 petition to obtain a recall of his sentence, but it permitted defendant to file the petition while preserving his objection to the procedure.

After defendant filed his section 1170.18 petition under protest, the trial court reduced his conviction to a misdemeanor and his term of probation from five to three years. Following his admission of the probation violation, defendant's probation was revoked, he was given a jail sentence of time served, and his probation was restored.

## II. DISCUSSION

Defendant contends *Estrada* required his conviction to be reduced from a felony to a misdemeanor as a result of the retroactive application of the mitigating amendments enacted by Proposition 47, rather than pursuant to a petition for recall of sentence under section 1170.18. As discussed below, defendant's argument depends upon his contention that, because he was on probation after suspension of the imposition of sentence, he was not "currently serving a sentence" for purposes of section 1170.18, subdivision (a).

---

[2] Although defense counsel did not explain defendant's reluctance to petition for recall of sentence under section 1170.18, we presume he was attempting to avoid the continued ban on firearm possession imposed by section 1170.18, subdivision (k). Similarly, this appeal is meaningful only if application of *Estrada* would permit defendant to obtain a reduction in his conviction free of the condition in subdivision (k), since his sentence otherwise has been recalled and reduced. We assume, without deciding, that *Estrada* would require an unconditional reduction in his sentence.

3

Because we conclude that persons on probation are "serving a sentence" for purposes of section 1170.18, we affirm the trial court's decision to proceed by way of the petition.

## A. *Governing Law*

### 1. Proposition 47

The voters enacted Proposition 47 on November 4, 2014, effective the next day. (Cal. Const., art. II, § 10, subd. (a); *People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108 (*Lynall*).) As summarized by the Legislative Analyst, the proposition "reduces penalties for certain offenders convicted of nonserious and nonviolent property and drug crimes" and "allows certain offenders who have been previously convicted of such crimes to apply for reduced sentences." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis by the Legis. Analyst, p. 35 (Ballot Pamphlet).) One of those "nonserious and nonviolent property and drug crimes" is possession of a controlled substance under Health and Safety Code section 11377, subdivision (a). (Ballot Pamphlet, *supra*, text of Prop. 47, § 13, p. 73.)

Prior to the amendment, a violation of Health and Safety Code section 11377, subdivision (a) was a wobbler, with the nature of the violation determined in the discretion of the sentencing court. (*Lynall*, *supra*, 233 Cal.App.4th at p. 1108.) As a result of Proposition 47, a violation of the statute is now a misdemeanor, unless the defendant has one or more prior convictions for a series of enumerated, serious offenses. (Health & Saf. Code, § 11377, subd. (a).) The purpose of this and other similar changes was "to ensure that prison spending is focused on violent and serious offenses [and] to maximize alternatives for nonserious, nonviolent crime." (Ballot Pamphlet, *supra*, text of Prop. 47, § 2, p. 70.)

Proposition 47 also added section 1170.18 (Ballot Pamphlet, *supra*, text of Prop. 47, § 14, pp. 73–74), which provides a statutory remedy for persons previously convicted of a felony "who would have been guilty of a misdemeanor under [Proposition 47]" had it been in effect at the time of their offense. (§ 1170.18, subd. (a).) Under section 1170.18, subdivision (a), a person "currently serving a sentence" for such a conviction "may petition for a recall of sentence before the trial court that entered the

4

judgment of conviction in his or her case to request resentencing" in accordance with the amended versions of the statutes. Section 1170.18, subdivision (b) specifies the procedure for a trial court to follow upon receiving such a petition. If the trial court finds "the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . , unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

Proposition 47 also created a similar remedy by which "[a] person who has completed his or her sentence" for such a felony conviction may have the conviction reduced. (§ 1170.18, subd. (f).) Such a person "may file an application before the trial court that entered the judgment of conviction in his or her case," and "[i]f the application satisfies the criteria . . . , the court shall designate the felony offense or offenses as a misdemeanor." (§ 1170.18, subds. (f), (g).)

As noted above, section 1170.18, subdivision (k) imposes one qualification on the recall or redesignation of these felony convictions: "Any felony conviction that is recalled and resentenced under subdivision (b) or designated as a misdemeanor under subdivision (g) shall be considered a misdemeanor for all purposes, except that such resentencing shall not permit that person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction [for being a felon in possession of a firearm]."

### 2. Retroactive Application of Criminal Statutes

Whether a criminal statute is to be applied retroactively is, in the first instance, a matter of legislative intent. (*People v. Brown* (2012) 54 Cal.4th 314, 319 (*Brown*).) "[T]he default rule," applied when the Legislature "has not made its intent on the matter clear" (*ibid.*) is found in section 3: "No part of [the Penal Code] is retroactive, unless expressly so declared." Section 3, which creates a "strong presumption" of prospective operation (*Brown*, at p. 324), embodies "the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a

5

retroactive application." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208–1209.)

Estrada, which creates a presumption of retroactivity in apparent contradiction to the default rule, has been confined by subsequent decisions to its " 'specific context.' " (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1196, disapproved on other grounds in *People v. Rangel* (Mar. 28, 2016, S076785) ___ Cal.4th ___ [2016 Cal. Lexis 1816, *38].) In *Estrada*, the court considered whether a statutory amendment lessening a criminal punishment, enacted after the defendant's criminal act was committed but before the judgment became final, should be applied retroactively to mitigate his punishment. (*Estrada, supra*, 63 Cal.2d at p. 742.) The court acknowledged the primacy of legislative intent in resolving the issue, noting that "[h]ad the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional." (*Id.* at p. 744.) Because the legislation contained no express indication of intent, however, the court invoked a presumption of retroactivity, reasoning: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. . . . [T]o hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Id.* at p. 745.)

The *Estrada* court expressly recognized the result might have been different if the statute contained a "saving clause," which allows punishment for an act already committed following the suspension or termination of the statute making the act criminal. (*Estrada, supra*, 63 Cal.2d at p. 748.) Subsequent decisions confirm that when the Legislature "clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent," the rule of *Estrada* "is not

6

implicated." (*People v. Nasalga* (1996) 12 Cal.4th 784, 793 (plur. opn. of Werdegar, J.), fn. omitted (*Nasalga*).)

**B. Estrada *and the Retroactive Application of Proposition 47***

The parties argue at length about the retroactive application of Proposition 47 under *Estrada*. The arguments put the cart before the horse.

As noted, the retroactive application of a statute is ultimately a matter of legislative intent. (*Brown, supra*, 54 Cal.4th at p. 319; *Nasalga*, *supra*, 12 Cal.4th at p. 792 (plur. opn. of Werdegar, J.) [legislative intent is " 'paramount' "].) When the Legislature—or, in this case, the electorate—has expressed its intent, that intent governs. (*People v. Floyd* (2003) 31 Cal.4th 179, 184–185; *Nasalga*, at p. 793 (plur. opn. of Werdegar, J.) [" 'what is required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it' "].) *Estrada* becomes relevant only when, as the decision itself acknowledged, the Legislature has been silent about its intent. (*Estrada, supra*, 63 Cal.2d at p. 744.)

In the case of Proposition 47, the electorate spoke with exceptional precision about the intended retroactive application of the changes to California criminal law at issue here. Persons "currently serving a sentence" for a conviction of a crime reduced from a felony to a misdemeanor by Proposition 47 are entitled to the benefit of the statutory changes, but only to the extent and under the conditions specified by section 1170.18, which governs the retroactive application of these changes. (§ 1170.18, subd. (a).) A person who has "completed his or her sentence" for such a crime is similarly entitled to a reduction of the conviction from a felony to a misdemeanor, again subject to the statutory procedure. (*Id.*, subds. (f), (g).)

For these purposes, section 1170.18 is identical to the sentence modification provisions of Proposition 36, enacted two years earlier. Proposition 36 amended the "Three Strikes" sentencing laws, eliminating life sentences for certain offenders. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 170 (*Yearwood*).) Under section 1170.126, added by the proposition, three strikes offenders who had been sentenced to a life term under prior law but would not have received a life sentence under the amendments

introduced by Proposition 36 were eligible to file a petition for recall and reduction of their sentence. (*Yearwood*, at p. 170.) Like Proposition 47, Proposition 36 did not contain a saving clause or otherwise refer expressly to retroactivity, and the defendant in *Yearwood* argued he was entitled to a reduction of his sentence under the doctrine of *Estrada*, without having to follow the procedures of section 1170.126. (*Yearwood*, at p. 172.) The *Yearwood* court rejected the argument, concluding section 1170.126 was "the functional equivalent of a saving clause" and demonstrated voter intent that "a petition for recall of sentence [under section 1170.126 was] to be the sole remedy available under the Act" for defendants seeking the retroactive application of its amendments. (*Yearwood*, at pp. 172, 175.) Just as section 1170.126 acted as the functional equivalent of a saving clause for Proposition 36 by specifying the precise manner in which the statutory changes effected by the proposition would be applied to persons sentenced under prior law, section 1170.18 plays the same role for Proposition 47.

Accordingly, in the case of persons who were either "currently serving a sentence" or had completed a sentence for a felony reduced to a misdemeanor by Proposition 47, the electorate made clear its intent as to the nature and extent of the retroactive application of the amendments. For those persons, there is no need, and no place, for inferences about retroactive application, and therefore no basis for invoking *Estrada*. As a result, the critical question to be answered before addressing retroactivity under *Estrada* is whether defendant, by virtue of his placement on probation, was "currently serving a sentence" for a felony conviction at the time Proposition 47 was enacted. *Estrada* becomes relevant only if he did not fall within that category, and for that reason was not within the class of persons as to whom the electorate specified its intent with respect to the retroactive application of the proposition. We do not understand defendant to argue otherwise.[3]

_____

[3] Various cases considering the interaction of *Estrada* and Proposition 47 are currently pending review by the California Supreme Court. While it is possible defendant could have made other arguments for invoking *Estrada*, he did not do so in his

8

**C.** *"Serving a Sentence"*

As discussed above, section 1170.18, subdivision (a), permits "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies," who would have been guilty of a misdemeanor had Proposition 47 been in effect at the time of the offense, to petition for a recall of sentence. Defendant argues he is not covered by subdivision (a) because he was not serving a term of imprisonment at the time of his petition.

In determining the meaning of section 1170.18, we apply the same rules of interpretation to the language of a proposition as we would to a legislative enactment. (*People v. Johnson* (2015) 61 Cal.4th 674, 682.) "When engaging in statutory construction, '[w]e begin with the statutory language because it is generally the most reliable indication of legislative intent. [Citation.] If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls. [Citation.]' [Citation.] If the language is susceptible of multiple interpretations, 'the court looks "to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.] After considering these extrinsic aids, we "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1063, disapproved on other grounds in *People v. Harrison* (2013) 57 Cal.4th 1211, 1230, fn. 2 (*Lopez*).) " ' "When the language [of an initiative measure] is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' " ' [Citation.] 'In

---

opening brief and therefore forfeited any such arguments. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.)

9

other words, our "task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent." ' " (*People v. Arroyo* (2016) 62 Cal.4th 589, 593.)

### 1. The Language of Section 1170.18

Because the readings proposed by both parties of the relevant language from section 1170.18 are plausible, the statute is ambiguous. As defendant rightly points out, the phrase "serving a sentence," when used within the law, generally refers to serving a term of confinement, and it is *contrasted* with a defendant's being placed on probation. For example, section 1203, subdivision (a), defines "probation" as the "suspension of the imposition or execution of a sentence," combined with supervised release. Similarly, in *People v. Rosbury* (1997) 15 Cal.4th 206, the Supreme Court held that a person who is placed on probation is not serving a "sentence" for purposes of section 667, subdivision (c)(8). (*Rosbury*, at pp. 210–211 ["The Legislature has treated the concepts of sentence and probation differently."]; see *Oster v. Municipal Court* (1955) 45 Cal.2d 134, 139–140.) In this case, the trial court suspended the imposition of sentence when placing defendant on probation, which means sentence has not been, and may never be, pronounced. For these reasons, it would be consistent with common legal usage to interpret "currently serving a sentence for a [felony] conviction" to mean serving a term of confinement, rather than being on probation.

On the other hand, as the Attorney General argues, the term "sentence" can also be understood to refer more generally to criminal sanction, whether by probation, prison term, or otherwise, and the relevant phrase from section 1170.18 can be interpreted to mean, in effect, "currently subject to judicially imposed sanction" as a result of a felony conviction. This is likely the plain meaning of the term "sentence," which Merriam-Webster defines as "one formally pronounced by a court or judge in a criminal proceeding and specifying the punishment to be inflicted upon the convict" and "the punishment so imposed."[4] (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 1134.)

---

[4] Black's Law Dictionary also arguably defines the term in this manner, as "The judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer." (Black's Law Dict. (10th ed. 2009)

10

Nor is usage in this manner unheard of within the law. The same statutory provision declaring probation to occur when sentence is suspended also defines the term "conditional sentence" to mean unsupervised community release. (§ 1203, subd. (a).) Further, California Rules of Court, rule 4.405 defines " 'Sentence choice' " as "the selection of any disposition of the case that does not amount to a dismissal, acquittal, or grant of a new trial," thereby including probation as a sentence choice. (See Cal. Rules of Court, rule 4.406, subd. (b)(1) ["[g]ranting probation" is a "sentence choice" requiring a statement of reasons]; *People v. Villanueva* (1991) 230 Cal.App.3d 1157, 1161 [same].) Judicial decisions have also used the term "sentence" in this manner.[5] It is therefore clear that the term "sentence" can be, and is, used to refer both to a term of confinement specifically and to criminal punishment generally.[6] Although the latter use is more colloquial than defendant's suggested interpretation, it is by no means unreasonable.

Defendant argues his interpretation is further supported by the portion of subdivision (a) of section 1170.18 that requires the defendant to "petition for a recall of sentence before the trial court that entered the *judgment of conviction*." (Italics added.) As he argues, it has been held that when a trial court suspends imposition of sentence and places the defendant on probation, "no judgment is then pending against the probationer." (*People v. Howard* (1997) 16 Cal.4th 1081, 1087.) This argument, however, merely shifts the focus from the ambiguity of "sentence" to the ambiguity of "judgment." As

p. 1569, col. 2.) Even this definition is ambiguous, however, because, as discussed *infra*, the term "judgment" can have more than one meaning in this context.

    [5] (See *People v. Tran* (2015) 242 Cal.App.4th 877, 888 [court "determin[ed] defendant's sentence" when granting probation]; *People v. Bolian* (2014) 231 Cal.App.4th 1415, 1420 [referring to reinstatement of probation as a "sentencing option[]"]; *In re DeLong* (2001) 93 Cal.App.4th 562, 571 ["an order granting probation and suspending imposition of sentence is a form of sentencing"]; *People v. Downey* (2000) 82 Cal.App.4th 899, 910 [court made "sentence choice" in declining to reinstate probation]; *People v. Crouch* (1982) 131 Cal.App.3d 902, 904, fn. 1 [referring to probation as the "sentence of choice"].)

    [6] While probation is not technically a "punishment," being " 'rehabilitative in nature' " (*People v. Minor* (2010) 189 Cal.App.4th 1, 9–10), there is no question it is a sanction that imposes significant restrictions on the civil liberties of a defendant.

*Howard* implicitly recognizes, section 1237, which governs criminal appeals, expressly deems an order granting probation to be a "judgment of conviction," the precise language used by section 1170.18. (§ 1237; see *Howard*, at p. 1087 ["The probation order is considered to be a final judgment only for the 'limited purpose of taking an appeal therefrom.' "].) Because Proposition 47 does not tell us what type of judgment the electorate had in mind, the argument does not move us any closer to a resolution.

Defendant also cites other language in section 1170.18 that appears to apply to persons who are serving or have served a term in prison, such as the reference in subdivision (b)(2) to a petitioner's performance while incarcerated, the requirement in subdivision (d) that resentenced petitioners serve a period of parole, and the reference in subdivision (o) to a postconviction release proceeding. Such references, however, are not inconsistent with a conclusion that probationers are entitled to petition under section 1170.18. These particular provisions are merely inapplicable to such petitioners. Similarly, granting trial courts the option to deny a petition on grounds of public safety, a concern that likely would arise most often with imprisoned felons, is not inconsistent with allowing probationers to petition under section 1170.18.

### 2. Extrinsic Aids to Interpretation

Given the ambiguity of the statutory language, we must resort to extrinsic aids to settle on a definition. The limited "legislative history" available—the analyses and arguments contained in the official ballot pamphlet—are only modestly helpful. While an introductory section of the proposition, entitled "Purpose and Intent," mentions sentence recall for convicted felons, it merely echoes the language of section 1170.18, describing the relevant purposes as, "[a]uthorize consideration of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors" and "[r]equire a thorough review of criminal history and risk assessment

12

of any individuals before resentencing to ensure that they do not pose a risk to public safety." (Ballot Pamphlet, *supra*, text of Prop. 47, § 3, p. 70.)[7]

The analysis of the Legislative Analyst, however, provides some reason for presuming the electorate viewed "serving a sentence" more broadly than serving a term of confinement. In a background discussion of "Felony Sentencing," the analyst discussed commitment to state prison, commitment to county jail, and placement on probation. All of these options were presented as ways in which "[o]ffenders convicted of felonies can be sentenced." (Ballot Pamphlet, *supra*, analysis of the Legis. Analyst, p. 34.) Similarly, in discussing "Misdemeanor Sentencing," the analyst stated, "Under current law, offenders convicted of misdemeanors may be sentenced to county jail, county community supervision, a fine, or some combination of the three." (*Id.* at pp. 34–35.) A voter who reviewed the official ballot pamphlet therefore had reason to believe that "serving a sentence" for a felony included placement on probation, as well as a term of confinement.

Given the less than conclusive nature of the legislative history, we are left to the other extrinsic aids—" ' "the ostensible objects to be achieved, the evils to be remedied, . . . public policy, . . . and the statutory scheme of which the statute is a part" ' " (*Lopez, supra*, 50 Cal.4th at p. 1063)—to resolve the issue. Resolution of the issue on this basis is straightforward. The definition of "currently serving a sentence" that best fits the purposes of Proposition 47 and the public policy underlying it is clearly the more inclusive one. The provision in question was intended to apply the changes effected by the proposition to persons who had already suffered felony convictions for crimes now

_____

[7] Similarly, with respect to the recall of sentences, the Legislative Analyst stated merely, "[t]his measure allows offenders currently serving felony sentences for the above crimes to apply to have their felony sentences reduced to misdemeanor sentences" and "[t]he measure . . . allows certain offenders who have been previously convicted of such crimes to apply for reduced sentences." (Ballot Pamphlet, *supra*, analysis of the Legis. Analyst, pp. 35, 36.) The arguments of supporters and opponents do not focus on this provision at all, other than to claim (and dispute) that passage of the proposition would result in the release of 10,000 imprisoned felons. (Ballot Pamphlet, *supra*, arguments in favor of and against Proposition 47, pp. 38–39.)

declared to be misdemeanors. The Supreme Court in *Estrada* found it "obvious" the Legislature intended statutes mitigating punishment to be applied retroactively to the maximum permissible extent, since to infer otherwise "would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Estrada, supra*, 63 Cal.2d at p. 745.) For much the same reason, we infer the electorate was similarly motivated in authorizing the recall of felony sentences under section 1170.18. Consistent with this inference of lenity, we presume the electorate intended to make all persons who were subject to judicial sanction under a felony conviction eligible for recall of sentence under subdivision (a) of section 1170.18, rather than only those persons who were actually confined.[8] This broader reading is, without serious question, " ' "the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute." ' " (*Lopez*, at p. 1063.)

Conspicuously absent from defendant's submissions is any explanation why the electorate might have wanted to grant recall of sentence to defendants receiving a prison term while excluding probationers from similar relief. Because probationers are more likely to be nonviolent offenders and have a limited criminal history, they are ostensibly more "worthy" of reduction in their crimes and sentences than persons sentenced to a prison term, at least as a general matter. If the electorate was willing to extend the remedy of recall to felons sentenced to prison, they presumably would be even more willing to extend that remedy to probationers. We are unaware of any plausible

---

[8] Supporting this inference of lenity, we note the electorate expressly gave a broader retroactive application to the amendments of Proposition 47 than would have been required by *Estrada*. *Estrada* limits the retroactive application of mitigating amendments to defendants whose convictions have not become final—that is, to defendants who still have appellate options. (*Estrada, supra*, 63 Cal.2d at p. 745; see *People v. Vieira* (2005) 35 Cal.4th 264, 306.) Section 1170.18, subdivision (f) permits all eligible persons who have served a sentence for a felony to apply for redesignation of their conviction as a misdemeanor, without regard to the finality of the conviction.

14

explanation for making a distinction between probationers and persons sentenced to confinement in this respect.[9]

In urging the application of *Estrada*, defendant implicitly argues the electorate intended to grant the conditional relief of section 1170.18, which requires an examination of public safety and bars resentenced felons from firearms possession, to persons sentenced to prison, while granting unconditional and essentially automatic recall of sentence to probationers. While the typically less serious criminal histories of defendants who are placed on probation might provide a basis in policy for making such a distinction, there is nothing in the language of Proposition 47 to suggest the electorate intended it. As discussed at length above, section 1170.18 makes no express distinction between defendants who received a prison term and probationers. Further, Proposition 47 makes no provision for the resentencing of any defendant without the conditions imposed by section 1170.18. We therefore have no basis for inferring an intent to treat probationers more leniently.

Because we find defendant to be within the class of persons covered by section 1170.18, subdivision (a), the trial court's order must be affirmed, and we need not consider whether, as defendant argues, he would otherwise have been eligible for a reduction of sentence under *Estrada* that did not include the ban on firearm's possession.

---

[9] We note that several reported decisions have considered appeals from probationers who filed petitions under section 1170.18 without questioning the right of those petitioners to file a petition. (*People v. Amaya* (2015) 242 Cal.App.4th 972, 974–975; *People v. Hoffman* (2015) 241 Cal.App.4th 1304, 1308–1309; *People v. Rivas-Colon* (2015) 241 Cal.App.4th 444, 447.) We presume the issue was not raised because, notwithstanding the obvious technical interpretation that could be given to Proposition 47's language, neither prosecutors, defendants, nor courts could come up with a good policy reason for interpreting section 1170.18 to exclude persons on probation.

15

## III.  DISPOSITION

The judgment of the trial court is affirmed.


_____
Margulies, J.


We concur:


_____
Humes, P.J.


_____
Banke, J.

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Paul A. Delucchi

Counsel:

Brendon D. Woods, Public Defender, Michael S. McCormick, Assistant Public Defender for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Jeffrey M. Laurence, Assistant Attorneys General, Catherine A. Rivlin and Karen Z. Bovarnick, Deputy Attorneys General for Plaintiff and Respondent.