Filed 7/19/16

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| THE PEOPLE, | B264614 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA077541) |
| v. | |
| JULIUS FERNANDO SALMORIN, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County, Monica Bachner, Judge. Reversed and remanded.

Carlos Ramirez, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

After pleading no contest to forgery, Julius Fernando Salmorin petitioned to recall his sentence under Proposition 47, the Safe Neighborhoods and Schools Act (Pen. Code, § 1170.18).[1] The trial court denied the petition, concluding the aggregate value of the checks Salmorin was convicted of forging made him ineligible for resentencing. Because the trial court erred by aggregating the face amounts of the forged checks, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2013 the People charged Salmorin and Debra Lynn Spratt with three felonies: forgery (§ 470, subd. (d)),[2] receiving stolen property (§ 496, subd. (a)), and possession of methamphetamine (Health & Saf. Code, §11377, subd. (a)). Salmorin waived his right to a jury trial and pleaded no contest to the forgery count. Pursuant to a negotiated agreement, the trial court suspended imposition of sentence and placed Salmorin on three years of formal probation. The court dismissed the remaining counts on the People's motion.

In March 2015 Salmorin filed a petition for resentencing under Proposition 47 and checked the preprinted box indicating "[t]he amount in question is not more than $950.00." The People opposed the petition, and the court set the matter for a hearing.

At the beginning of the hearing, the trial court stated it did not have the court file, but had reviewed copies of the probation officer's report, the complaint, the arresting officer's report, and photographs of the stolen checks, all of which had been provided by

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    Section 470, subdivision (d), states in relevant part: "Every person who, with the intent to defraud, falsely makes, alters, forges, or counterfeits, utters, publishes, passes or attempts or offers to pass, as true and genuine, any [check], knowing the same to be false, altered, forged, or counterfeited, is guilty of forgery . . . ."

counsel.  The court received into evidence the police report and photographs without objection.[3]

The prosecutor summarized the contents of the police report:  Salmorin and Spratt received some stolen checks, were told to cash them, and were allowed to keep 10 percent of the proceeds.  When arrested, Salmorin and Spratt had five stolen checks in their possession:  a blank check, a $245 check payable to Ralph Tagarao (an assumed name used by Salmorin), an $880 check payable to another individual, and two checks payable to Spratt, one of which was for $208.  The prosecutor argued that, in the 2013 prosecution, the People had proceeded on the theory that, because Salmorin and Spratt had jointly possessed all of the stolen checks, they had committed the forgeries as a joint venture or criminal enterprise.  (See, e.g. *People v. Land* (1994) 30 Cal.App.4th 220, 227-228.)  The People acknowledged that none of the individual checks had a value greater than $950, but "proceeded on an aggregate theory" that the total value of the checks exceeded $950.  The People argued that the amounts of the checks "can and should be aggregated for the purpose of determining value" for Proposition 47, and that therefore Salmorin was ineligible for resentencing.

Counsel for Salmorin presented no evidence at the hearing.  Relying on the police report, counsel argued that Salmorin was eligible for resentencing because the only check attributable to Salmorin was the $245 check payable to Salmorin's assumed name.

The trial court denied the petition.  The court found that Salmorin and Spratt had engaged in a joint criminal enterprise, and that the aggregate value of the forged checks exceeded $950.

---

[3]     The superior court file was in another court.  The probation officer's report, police report, and attached photographs received into evidence are not part of the record on appeal.

**DISCUSSION**

A.      *Proposition 47 and Forgery Offenses*

Proposition 47 makes certain drug-related and theft-related offenses misdemeanors, unless the offenses were committed by certain ineligible defendants. (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091.)  "As summarized by the Legislative Analyst, the proposition 'reduces penalties for certain offenders convicted of nonserious and nonviolent property and drug crimes' and 'allows certain offenders who have been previously convicted of such crimes to apply for reduced sentences.'" (*People v. Davis* (2016) 246 Cal.App.4th 127, 134.)

Proposition 47 changed the law regarding the punishment of forgery by adding section 473, subdivision (b), which provides that "any person who is guilty of forgery relating to a check, bond, bank bill, note, cashier's check, traveler's check, or money order, where the value of the check, bond, bank bill, note, cashier's check, traveler's check, or money order does not exceed nine hundred fifty dollars ($950), shall be punishable by imprisonment in a county jail for not more than one year." (§ 473, subd. (b).)  "Proposition 47 also created a new resentencing provision: section 1170.18.  Under section 1170.18, a person 'currently serving' a felony sentence for an offense that is now a misdemeanor under Proposition 47, may petition for a recall of that sentence and request resentencing in accordance with the statutes that were added or amended by Proposition 47.  (§ 1170.18, subd. (a).)  A person who satisfies the criteria in section 1170.18 shall have his or her sentence recalled and be 'resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.'" (*People v. Rivera*, *supra*, 233 Cal.App.4th at p. 1092; see *People v. Bush* (2016) 245 Cal.App.4th 992, 1004 [Proposition 47 amended section 473 "to reflect eligibility for resentencing" for certain forgery convictions].)

We review the trial court's construction of Proposition 47 de novo.  (*People v. Sherow* (2015) 239 Cal.App.4th 875, 879.)  We review any factual findings in connection

4

with the court's ruling on the petition for substantial evidence. (*People v. Perkins* (2016) 244 Cal.App.4th 129, 136; see *People v. Smith* (2015) 61 Cal.4th 18, 39).

        B.      *The Trial Court Did Not Err in Considering the Police Report*

Salmorin argues that the trial court erred by relying on the police report, which was not part of the record of conviction,[4] to determine the value of the forged checks. In support of his argument, Salmorin cites *People v. Bradford* (2014) 227 Cal.App.4th 1322, 1339-1340 (*Bradford*), which held that the trial court must determine whether a petitioner is eligible for resentencing under Proposition 36, the Three Strikes Reform Act of 2012, "based solely on evidence found in the record of conviction." (*Id.* at p. 1331.) Salmorin argues that, because the structures of Proposition 36 and Proposition 47 are similar, the trial court's determination whether a petitioner is eligible for resentencing under Proposition 47 is also limited to evidence from the record of conviction. The two initiatives, however, are not similar in that respect.

As the court in *People v. Perkins*, *supra*, 244 Cal.App.4th 129 explained in distinguishing *Bradford*, eligibility for resentencing under Proposition 36 "turns on the nature of the petitioner's convictions—whether an offender is serving a sentence on a conviction for nonserious, nonviolent offenses and whether he or she has prior disqualifying convictions for certain defined offenses. (§ 1170.126, subd. (e).) By contrast, under Proposition 47, eligibility often turns on the simple factual question of the value of the stolen property. In most such cases, the value of the property was not important at the time of conviction, so the record may not contain sufficient evidence to determine its value. For that reason, and because petitioner bears the burden on the issue (Evid. Code, § 500), we do not believe the *Bradford* court's reasons for limiting evidence to the record of conviction are applicable in Proposition 47 cases." (*Perkins, supra,* 244 Cal.App.4th at p. 140, fn. 5.) Moreover, the parties here agreed that the court needed

---

[4]    See *People v. Reed* (1996) 13 Cal.4th 217, 223-229; *Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1521.

additional facts from the police report to determine whether Salmorin was entitled to relief. Counsel for Salmorin not only agreed to the admission of the police report, she relied on the report to argue that only one check, in the amount of $245, was attributable to Salmorin. Therefore, the trial court did not err by considering the police report.

C.      *The Trial Court Erred in Denying Salmorin's Petition*

The trial court found and the People argue on appeal that Salmorin failed to meet his burden to prove the aggregate value of the checks did not exceed $950 by claiming that only one of the forged checks was attributable to him. (See *People v. Sherow, supra,* 239 Cal.App.4th at pp. 879-880 [petitioner has the initial burden of proving eligibility for resentencing under section 1170.18, subdivision (a)].) The trial court's ruling depended on the resolution of two issues: (1) how the court should determine the value of each check, and (2) whether the court may aggregate the values of the checks. The trial court correctly ruled that the value of each check was the face value of the check, but erred by aggregating the individual checks to reach $950.

1.      The Trial Court Correctly Valued Each Forged Check

Citing *People v. Cuellar* (2008) 165 Cal.App.4th 833 (*Cuellar*), Salmorin argues that the checks had "an insignificant intrinsic value," particularly because he made "no attempt . . . to negotiate any of the checks that were recovered during his arrest."[5] The trial court correctly ruled, however, that, for purposes of resentencing under Proposition 47, the value of a forged check is the face value of the check. Under Proposition 47, the market value of any forged instrument listed in section 473, subdivision (b), may or may

---

[5]      In *Cuellar* the defendant was convicted of grand theft after he took what the court described as a "bogus check" from a department store sales clerk. In concluding that the evidence was sufficient to support the conviction, the court in *Cuellar* reasoned that, although "a forged check does not have a value equal to the amount for which it is written," it "had slight intrinsic value by virtue of the paper it was printed on," as well as "intrinsic value as a negotiable instrument that, if legally drawn, would entitle its holder to payment on demand." (*Cuellar, supra,* 165 Cal.App.4th at pp. 838-839.)

not correspond to the face value of the instrument, depending on the existence of a secondary market or other evidence of value.  In the context of forgery, however, the word "value" as used in section 473, subdivision (b), corresponds to the stated value or face value of the check.  The trial court did not err in considering the face value of the forged checks for purposes of determining Salmorin's eligibility for Proposition 47 resentencing.

### 2.     The Trial Court Erred in Aggregating the Check Values

#### a.     *Section 473, subdivision (b), does not permit aggregation*

The trial court erred, however, by using the aggregate value of the checks to determine whether Salmorin was entitled to resentencing under section 473, subdivision (b).  As the court concluded in *People v. Hoffman* (2015) 241 Cal.App.4th 1304 (*Hoffman*), on which Salmorin places principal reliance, "section 473 does not authorize the trial court to aggregate check values."  (*Id.* at p. 1310.)

The People argue that *Hoffman* is distinguishable because in that case each individual forged check was the basis of a separate count, whereas in this case all of the forged checks were included in the same count.  According to the People, section 473, subdivision (b), does not prohibit the trial court from aggregating the value of forged checks where, as here, the checks are the subject of a single charged offense.  The language of section 473, subdivision (b), however, does not support the People's position.

"In interpreting a voter initiative . . . we apply the same principles that govern statutory construction.  [Citation.]  Thus, 'we turn first to the language of the statute, giving the words their ordinary meaning.'  [Citation.]  The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme.  [Citation.]  When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.'  [Citation.]  If a penal statute is still reasonably susceptible to multiple constructions, then we ordinarily adopt the '"construction which is more favorable to the offender . . . ."'"

7

(*People v. Rizo* (2000) 22 Cal.4th 681, 685-686; accord, *People v. Marks* (2015) 243 Cal.App.4th 331, 334; see *Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1043 (*Kempton*) ["[o]ur role as a reviewing court is to simply ascertain and give effect to the electorate's intent guided by the same well-settled principles we employ to give effect to the Legislature's intent when we review enactments by that body"].)

We begin then with the "'usual, ordinary meaning'" of the language of the statute. (*People v. Harbison* (2014) 230 Cal.App.4th 975, 980.) With exceptions not relevant here, Section 473, subdivision (b), provides that "[a]ny person who is guilty of forgery relating to a check, . . . where the value of the check . . . does not exceed [$950], shall be punishable by imprisonment in a county jail for not more than one year." (§ 473, subd. (b).) In referring to "*a* check" and "the value of *the* check," the language of the statute distinguishes misdemeanor forgery from felony forgery based on the value of any single check the person is guilty of forging, not the aggregate value of two or more checks. (§ 473, subd. (b), italics added; see *Hoffman*, *supra*, 241 Cal.App.4th at p. 1310 ["[t]he misdemeanor/felony characterization for forgery depends on 'the value of the check' or other instrument"].) Nothing in the ordinary meaning of the words of section 473, subdivision (b), supports the People's distinction between individual checks charged in separate counts and multiple checks charged in a single count. And we may not read that distinction into the statute. (See *Suarez v. City of Corona* (2014) 229 Cal.App.4th 325, 333 ["'[w]e are not free to give the words of a statute a definition "different from the plain and direct import of the terms used,"'" and instead "'it is our role to ascertain the meaning of the words used, not to insert what has been omitted or otherwise rewrite the law to conform to an intention that has not been expressed'"]; *Arocho v. California Fair Plan Ins. Co.* (2005) 134 Cal.App.4th 461, 466 ["'[w]e are not free to give the words of a statute a definition "different from the plain and direct import of the terms used"'"]; *People v. Salazar-Merino* (2001) 89 Cal.App.4th 590, 597 ["'a court may not rewrite a law, supply an omission or give words an effect different from the plain and direct import of the terms used'"].)

"[T]he context of the statute as a whole and the overall statutory scheme" also weigh against the People's proposed interpretation of section 473, subdivision (b). (*People v. Rizo*, *supra*, 22 Cal.4th at p. 686; see *People v. Jones* (2001) 25 Cal.4th 98, 111-112 ["[s]tatutes may not be construed in isolation, but must be harmonized with reference to the entire scheme of the law of which they are a part"].) In addition to changing the law relating to punishment for forgery, Proposition 47 amended section 476a, subdivision (b), which concerns the penalty for delivering a check with insufficient funds. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of proposed laws, p. 71.) As amended, section 476a, subdivision (b), provides in relevant part that, "if the total amount of all checks, drafts, or orders that the defendant is charged with and convicted of making, drawing, or uttering does not exceed [$950], the offense is punishable only by imprisonment in the county jail for not more than one year." (§ 476a, subd. (b).) Thus, the drafters of the initiative, and presumably the voters (*Kempton*, *supra*, 40 Cal.4th at p. 1037; *People v. Jackson* (1996) 13 Cal.4th 1164, 1255), knew how to use a "'total amount' approach" that aggregated the value of multiple checks to determine whether an offense is a misdemeanor, but chose not to use that approach, either to a single charged offense or across multiple charged offenses, in section 473, subdivision (b). (See *Hoffman*, *supra*, 241 Cal.App.4th at p. 1310; see also *Kempton*, *supra*, 40 Cal.4th at pp. 1043-1044 [references to the "Legislature" in Government Code section added by proposition "demonstrate that the drafters of the initiative were perfectly capable of designating the Legislature by name where they intended to address the impact of the initiative on the Legislature's authority to regulate private contracting"].)

Proposition 47 also included a provision requiring that it "be liberally construed to effectuate its purposes." (Prop. 47, eff. Nov. 5, 2014, § 18; Voter Information Guide, *supra*, text of proposed laws, p. 74; see *People v. Tidwell* (2016) 246 Cal.App.4th 212, 219 ["[t]he text of Proposition 47, as enacted by the voters, provides that '[t]his act shall be liberally construed to effectuate its purposes'"].) One of those purposes is to "[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent

9

or serious crimes." (Voter Information Guide, *supra*, text of proposed laws, p. 70.) The People's proposed interpretation of section 473, subdivision (b), is not a liberal construction of the statute and does not effectuate the purpose of "[r]equir[ing] misdemeanors instead of felonies." To the contrary, under the People's proposed interpretation, fewer forgery offenses would qualify as misdemeanors.

Moreover, to the extent there is any ambiguity in the language of section 473, subdivision (b), "'other indicia of the voters' intent'" do not support the People's interpretation. (*People v. Marks*, *supra*, 243 Cal.App.4th at p. 334; cf. *People v. Morales* (2016) 63 Cal.4th 399, 406 ["we can [assume] that the voters, or at least some of them, read and were guided by the ballot materials concerning the proposition"]; *Silicon Valley Taxpayers v. Santa Clara OSA* (2008) 44 Cal.4th 431, 444-445 ["if the language is ambiguous, we consider extrinsic evidence in determining voter intent, including the Legislative Analyst's analysis and ballot arguments for and against the initiative"].) "As the legislative analyst explained, 'Under this measure, forging a check worth $950 or less would always be a misdemeanor,' unless 'the offender commits identity theft in connection with forging a check.'" (*Hoffman*, *supra*, 241 Cal.App.4th at p. 1310, quoting Voter Information Guide, *supra*, analysis by the legislative analyst, p. 35.) The legislative analyst's use of the word "always" strongly suggests voters did not intend the court to disqualify a defendant from relief under Proposition 47 by aggregating the value of multiple forged checks worth $950 or less even if the People charged the forgeries in a single offense. (See *People v. Harbison*, *supra*, 230 Cal.App.4th at p. 980 ["[t]he language of the initiative, and the analyses and argument in the official ballot pamphlet reflect the voters' intent"]; see also *People v. Morales*, at p. 407 ["'we may not properly interpret the measure in a way that the electorate did not contemplate: the voters should get what they enacted, not more and not less'"].)[6] Nor is the People's proposed

---

[6] Summarizing Proposition 47 for the voters, the Attorney General stated that Proposition 47 "[r]equires misdemeanor sentence instead of felony for the following crimes when amount involved is $950 or less: petty theft, receiving stolen property, and forging/writing bad checks." (Voter Information Guide, *supra*, official title and summary

10

interpretation "more favorable to the offender." (*People v. Rizo*, *supra*, 22 Cal.4th at p. 686; see *People v. Beaver* (2010) 186 Cal.App.4th 107, 117 ["[w]hen language of a penal provision is reasonably susceptible of two constructions, ordinarily the construction more favorable to the offender is adopted"].)

### b.  The Bailey doctrine does not apply

The People's contention that under section 473, subdivision (b), the court may aggregate multiple forgeries into a single felony offense also violates the rule that a single forgery offense cannot comprise multiple forgeries. (See *People v. Neder* (1971) 16 Cal.App.3d 846, 851-853 (*Neder*).) In *Neder* the court rejected the defendant's contention that forging three separate sales slips at a department store constituted a single offense of forgery under the doctrine, set forth in *People v. Bailey* (1961) 55 Cal.2d 514 (*Bailey*), that a theft involving several takings motivated by "'one intention, one general impulse and one plan'" constitutes a single offense of theft.[7] (*Neder*, at pp. 851-852; see *Bailey*, at p. 519.) The court began by noting, "Normally, separate acts, whether violating one or more than one statute, are separate offenses, and it makes no difference that the identical statute is violated with the same victim." (*Neder*, at p. 851.) The court

---

prepared by the Attorney General, p. 34.) We read the phrase "amount involved" not as suggesting aggregation in the case of forgery, but as a phrase meant to be broad enough to cover those crimes where the statutory language provides for aggregation (e.g., writing bad checks) and those where the statutory language does not (e.g., forging checks). In any event, this lone phrase, isolated in a single fragmentary bullet point, does not outweigh other indications in the voter information material that the voters did not contemplate allowing aggregation to deprive an otherwise qualified petitioner of his or her right to resentencing.

[7]  The defendant in *Bailey* made a single fraudulent misrepresentation about her household income that caused her to receive a stream of welfare payments. (*Bailey*, s*upra*, 55 Cal.2d at pp. 515-516.) While each individual payment fell below the felony threshold, the aggregated total constituted grand theft. (*Id.* at p. 518.) The Supreme Court concluded that the payments could be aggregated because "the evidence established that there was only one intention, one general impulse, and one plan." (*Id.* at p. 519.)

then cited cases holding that "forgery of several documents at the same time and in the course of one transaction constitutes a separate offense for each instrument." (*Id.* at p. 852.) The court concluded that, even though the defendant probably forged the three sales slips pursuant to one preconceived plan, the *Bailey* doctrine, developed for the crime of theft, should not be extended to forgery. (*Ibid.*) The court explained: "The essential act in all types of theft is taking. If a certain amount of money or property has been taken pursuant to one plan, it is most reasonable to consider the whole plan rather than to differentiate each component part. [Citation.] The real essence of the crime of forgery, however, is not concerned with the end, i.e., what is obtained or taken by the forgery; it has to do with the means, i.e., the act of signing the name of another with intent to defraud and without authority, or of falsely making a document, or of uttering the document with intent to defraud. Theft pursuant to a plan can be viewed as a large total taking accomplished by smaller takings. It is difficult to apply an analogous concept to forgery. The designation of a series of forgeries as one forgery would be a confusing fiction." (*Id.* at pp. 852-853.)

Courts have continued to recognize that "[t]he rule of one count of forgery per instrument is in accord with the essence of forgery, which is making or passing a false document." (*People v. Kenefick* (2009) 170 Cal.App.4th 114, 123; see *People v. Martinez* (2008) 161 Cal.App.4th 754, 762 [section 470, subdivision (d), "is violated each time a person makes and/or passes a forged *item*, no matter how many forged *signatures* are on the item"].) Moreover, courts have consistently followed *Neder* and refused to extend the *Bailey* doctrine to forgery and other nontheft offenses for the reasons articulated by the court in *Neder*. (See *People v. Richardson* (1978) 83 Cal.App.3d 853, 866 [forgery], disapproved on other grounds in *People v. Saddler* (1979) 24 Cal.3d 671, 682, fn. 8; see, e.g., *People v. Zanoletti* (2009) 173 Cal.App.4th 547, 559-560 [insurance fraud]; *People v. Mitchell* (2008) 164 Cal.App.4th 442, 455-457 [use of another's personal identifying information]; *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1476-1477 [corporal injury on a spouse]; *People v. Drake* (1996) 42 Cal.App.4th

12

592, 596 [Medi-Cal fraud]; *People v. Washington* (1996) 50 Cal.App.4th 568, 577 [burglary].[8]

Refusing to extend *Bailey* to forgery is consistent with the California Supreme Court's recent decision in *People v. Whitmer* (2014) 59 Cal.4th 733 (*Whitmer*). In *Whitmer*, the defendant was convicted of 20 counts of grand theft for stealing 20 vehicles from a dealership he managed by fraudulently arranging their sale to 20 fictitious buyers on 13 different dates. (*Id.* at p. 741.) The Supreme Court "conclude[d] that a defendant may be convicted of multiple counts of grand theft based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme." (*Ibid.*) Distinguishing *Bailey*, the court emphasized that the multiple petty thefts in that case could be aggregated into a single count of grand theft because the theft involved a "single misrepresentation" that produced a series of payments. (*Id.* at p. 740.) In contrast, where a defendant engages in "separate and distinct fraudulent acts," aggregation under the *Bailey* doctrine does not apply. (*Ibid.*) The Supreme Court "disapprove[d] of any interpretation of *Bailey* that is inconsistent with this conclusion." (*Id.* at p. 741.)

While narrowing the scope of *Bailey*, the Supreme Court in *Whitmer* did not explain the justification for *Bailey*'s aggregation rule. In his concurring opinion, however, Justice Liu offered a rationale: "Our decision in *Bailey* must be understood as having announced a general rule for determining what conduct, as a definitional matter, constitutes a single theft—not a special equitable rule, unmoored from the statutory definition of theft, that permits multiple small takings, but only small takings, to be aggregated into a single larger theft." (*Whitmer*, *supra*, 59 Cal.4th at p. 745 (conc. opn. of Liu, J.).) Justice Liu explained that the issue of aggregation raises a "unit of

---

[8]     The only exception to the general trend of refusing to extend the *Bailey* doctrine beyond theft cases appears to be vandalism. (See *People v. Carrasco* (2012) 209 Cal.App.4th 715, 719-720; *In re Arthur V.* (2008) 166 Cal.App.4th 61, 68-69; but see *People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1518 [noting the Supreme Court in *People v. Whitmer* (2014) 59 Cal.4th 733, 740-741 "jettisoned much of [the] earlier precedent" that included *Carrasco* and *Arthur V.*])

prosecution" question, which is an issue of legislative intent. (*Id*. at p. 744.) As Justice Liu observed, when the Legislature wants to define a crime using aggregation principles, "it knows how to say so." (*Id.* at p. 745; see, e.g., § 476a [authorizing aggregation of all checks the defendant is charged with making, drawing, or uttering with insufficient funds to determine if the amount exceeds $950]; §§ 484g, 484h [authorizing aggregation for theft by use of a forged or stolen credit card exceeding $950 "in any consecutive six-month period"]; § 487, subd. (b)(3) [theft of property or labor from an employer is grand theft if the property or labor "aggregates [$950] or more in any 12 consecutive month period"].) In any event, "[a]nswering a unit of prosecution question requires courts to determine when 'the actus reus prohibited by the statute—the gravamen of the offense—has been committed more than once.'" (*Whitmer*, at p. 744 (conc. opn. of Liu, J.).) The use of aggregation is thus a matter of legislative prerogative rather than prosecutorial discretion. (*Cf. id*. at p. 745 ["*Bailey* was not crafting a novel rule that allows a defendant to be found guilty of a single grand theft in circumstances where the defendant could *also* be found guilty of multiple petty thefts"].)

The Supreme Court's decision in *Whitmer* confirms the soundness of the court's reasoning in *Neder*. In distinguishing *Bailey*, the court in *Neder* correctly observed that the actus reus of the crime of forgery is "the act of signing the name of another with intent to defraud and without authority, or of falsely making a document, or of uttering the document with intent to defraud." (*Neder*, *supra*, 16 Cal.App.3d at p. 853.) Each time a defendant forges a separate check with the requisite intent, he or she commits a discrete offense of forgery. Thus, a defendant who forges two $500 checks with fraudulent intent is guilty of two discrete crimes (two misdemeanors), while the same defendant who forges a single check of $1,000 with fraudulent intent is guilty of a single crime (one felony). (See *People v. Gayle* (1927) 202 Cal. 159, 162-163 ["the false making and forging of two separate instruments, although done at the same time, are separate and distinct offenses"]; *People v. Ryan* (2006) 138 Cal.App.4th 360, 371 ["the commission of any one or more of the acts enumerated in section 470, *in reference to the*

14

*same instrument*, constitutes but one offense of forgery," italics added].) Although it may be debatable whether this result properly measures the two defendants' relative culpability, that debate is one of public policy for the Legislature, not the courts. (See *Whitmer*, *supra*, 59 Cal.4th at p. 747 (conc. opn. of Liu, J.) ["reasonable minds can differ as to whether a defendant who accepts 12 fraudulently obtained payments of $1,000 per month during a single year from the same victim is 12 times more blameworthy than a defendant who successfully plots for an entire year to steal $25,000 from the same victim," but "[w]e have no authority to supplement the statutory scheme with our own policy judgments as to the relative blameworthiness of various theft acts"].)

The principal case on which the People rely, *People v. Hughes* (1980) 112 Cal.App.3d 452 (*Hughes*), does not persuade us that, under the *Bailey* doctrine or otherwise, a single forgery offense may comprise multiple acts of forgery. In *Hughes*, the defendant pleaded no contest to an amended information that consolidated 23 counts of forgery into one count, and the trial court found true a special allegation that, in the course of committing those forgeries, the defendant took property worth more than $100,000, an amount that at the time qualified for a two-year enhancement under former section 12022.6, subdivision (b).[9] (*Hughes*, *supra*, 112 Cal.App.3d at pp. 455-456.) The trial court sentenced the defendant to two years for the forgery conviction plus two years for the enhancement, for a total of four years. (*Ibid.*)

---

[9] Former section 12022.6 provided in relevant part: "'Any person who takes, damages or destroys any property in the commission or attempted commission of a felony, with the intent to cause such taking, damage or destruction, and the loss exceeds: [¶] . . . [¶] (b) One hundred thousand dollars ($100,000), the court shall in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted impose an additional term of two years.'" (*Hughes, supra*, 112 Cal.App.3d at pp. 457-458.)

15

On appeal, the defendant argued that imposing the two-year enhancement violated section 654,[10] which, as interpreted by the Supreme Court in *Neal v. State of California* (1960) 55 Cal.2d 11 (*Neal*), prohibited multiple punishment for any act or indivisible course of conduct that violated more than one Penal Code section or the same Penal Code section more than once. (*Hughes, supra,* 112 Cal.App.3d at pp. 455, 460-461; see *Neal*, at pp. 18, fn. 1, 19.)[11]  The court in *Hughes* rejected the defendant's argument:  "Implicit in the district attorney's aggregation of 23 transactions into one forgery count is the notion that appellant engaged in an indivisible course of conduct and committed but one offense.  Whether this was true is a question of the intent and objective of the actor. [Citation.]  This is a question of fact which appellant must be deemed to have waived by his plea.  [*Neder*], upon which appellant relies[,] is distinguishable for this reason." (*Hughes*, at p. 461.)

In a footnote, the court in *Hughes* commented that the court in *Neder* rejected not only the contention that the three forgeries constituted one offense under *Bailey*, but also

---

10      At the time, section 654 provided in relevant part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one." (*Hughes*, *supra,* 112 Cal.App.3d at p. 460.)  It now provides in relevant part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)

11      In *Neal* the Supreme Court held:  "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal*, *supra,* 55 Cal.2d at p. 19; see *People v. Correa* (2012) 54 Cal.4th 331, 344 [although section 654 refers to "an act or omission," the Supreme Court in *Neal* concluded that the relevant question is whether "a defendant's '"course of conduct . . . comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654"'"].)  The Supreme Court has since disapproved its statement in *Neal* that section 654 bars multiple punishment for multiple violations of the same Penal Code section.  (See *People v. Correa*, at p. 344.)

16

the contention that under section 654 and *Neal* the defendant could be punished only once for the offense of forgery because his three forgeries were incident to one objective and thus presented an indivisible course of conduct. (*Hughes*, *supra*, 112 Cal.App.3d at p. 461, fn. 5.) The *Hughes* court observed that the *Neder* court found that the objective "'of taking goods from Sears' was 'too broad to tie the separate acts into one transaction.'" (*Hughes*, *supra*, 112 Cal.App.3d at p. 461, fn. 5.) The *Hughes* court then stated: "We do not read *Neder* as holding that as a matter of law a series of forgeries cannot constitute an indivisible transaction. Defendant there pled not guilty; therefore the appellate court had before it for consideration all of the facts developed at trial. In the case at bench we have a synopsis of facts in the probation report from which it may reasonably be inferred that appellant committed 23 acts which in fact constituted 1 offense. Furthermore, one of the premises of the *Neder* decision no longer exists. In light of the Legislature's enactment of section 12022.6, it can no longer be said that the crime of forgery 'is not concerned with the end, i.e., what is obtained or taken by forgery[],' but only with the means. Therefore were the issue properly presented to us on this appeal we would be inclined to hold that the *Bailey* doctrine may be extended to the crime of forgery. In light of appellant's plea, however, we decline to reach the issue." (*Hughes*, *supra*, 112 Cal.App.3d at p. 461, fn. 5.)

To the extent this language suggests that multiple forged checks may constitute "but one offense," (*Hughes*, *supra*, 112 Cal.App.3d at p. 461), we disagree with it. It does not appear that the court in *Hughes* distinguished between the question whether the defendant committed one or more than one offense and the question whether the defendant engaged in an indivisible course of conduct precluding multiple punishments under section 654 and *Neal*. Moreover, the enactment of section 12022.6 did not undermine the *Neder* court's reason for recognizing that the *Bailey* doctrine does not extend to forgery. (See *Hughes*, *supra*, 112 Cal.App.3d at p. 461, fn. 5.) The court in *Neder* refused to extend the *Bailey* doctrine to forgery because the doctrine is incompatible with the nature of the offense. (See *Neder*, *supra*, 16 Cal.App.3d at pp. 852-853.) Section 12022.6 did not alter the definition of forgery. Rather, it imposed

17

additional punishment for any felony during the commission (or attempted commission) of which the perpetrator intentionally took, damaged, or destroyed property of a specified value. (*Hughes*, *supra*, at pp. 457-458.) In fact, section 12022.6, as originally enacted, did not contain a provision allowing for aggregation. (See *People v. Green* (2011) 197 Cal.App.4th 1485, 1492.) Only in 1990 did the Legislature amend the statute to authorize aggregation, providing for an increased penalty if "the aggregate losses to the victims from all felonies exceed the amounts specified in this section and arise from a common scheme or plan." (§ 12022.6, subd. (b); see *People v. Green*, *supra*, 197 Cal.App.4th at p. 1492.) Thus, while section 12022.6 permits a court to aggregate the losses sustained from multiple forgeries for purposes of the enhancement, the statute did not redefine the offense of forgery to include an aggregation principle.

## DISPOSITION

The trial court's order denying Salmorin's petition for recall of his forgery conviction under section 1170.18 is reversed, and the matter is remanded with directions to resentence Salmorin in accordance with section 1170.18, unless the court, in its discretion, determines that resentencing Salmorin would pose an unreasonable risk of danger to public safety under section 1170.18, subdivision (b).

SEGAL, J.

We concur:

PERLUSS, P. J.                    BLUMENFELD, J.[*]

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18