[No. C050141. Third Dist. Dec. 20, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN DANIEL ARNOLD, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, IV and V of the Discussion.

**1410**

## COUNSEL

Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, John G. McLean and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DAVIS, J.**—In this case we interpret Penal Code section 12001, subdivision (c),[1] which provides that, for purposes of possession of a firearm by a convicted felon (§ 12021, subd. (a)(1)), "the term 'firearm' includes the frame or receiver of the weapon." We hold that possession of the "frame or receiver" is sufficient, but not necessary, for a section 12021, subdivision (a)(1), violation. We disagree with a reading of *People v. Gailord* (1993) 13 Cal.App.4th 1643 [17 Cal.Rptr.2d 272] (*Gailord*) to the extent that such a reading would suggest a defendant *must* possess *both* a barrel *and* a frame or receiver in order to be guilty of illegally possessing a firearm. Because defendant Kevin Daniel Arnold's possession of the barrel was undisputed, and only his possession of the frame or receiver is contested, we conclude his section 12021 conviction is supported by sufficient evidence.

In case No. 04-3470, a jury convicted defendant of theft or unauthorized use of a vehicle (Veh. Code, § 10851, subd. (a)—count 1), possession of a firearm by a convicted felon (§ 12021, subd. (a)(1)—count 3), and receiving stolen property (§ 496, subd. (a)—count 4). It acquitted him of a charge of possession of ammunition by a person prohibited from owning or possessing a firearm. (§ 12316, subd. (b)(1)—count 2.)

In case No. 00-0436, the trial court found that defendant violated his probation by committing the offenses in case No. 04-3470.

Defendant was sentenced to state prison for three years four months, consisting of two years for receiving stolen property, eight months for possession of a firearm, and eight months for the probation violation. Sentence for vehicle theft was stayed pursuant to section 654.

---

[1] Further undesignated section references are to the Penal Code.

In the published portion of our opinion, we consider defendant's contention that his possession of a firearm conviction must be reversed for insufficient evidence. In the unpublished portion of the opinion, we consider several contentions of instructional error and a contention that defendant's count 4 (receiving stolen property) conviction must be reversed because the People pleaded it as an alternative to count 1 (vehicle theft). We shall reverse count 4 and remand for resentencing.

FACTS

At the outset of trial, the parties stipulated that defendant had been previously convicted of a felony.

*Prosecution Case-in-chief*

In May 2004, Yolo County Sheriff's Detectives Mike Glaser and Lance Faille went to defendant's residence during an investigation of a stolen all-terrain vehicle (ATV). The property was a large rural parcel consisting of a main residence, a trailer, a travel trailer, a laundry room, and a barn. Detective Faille searched the trailer and found a firearm.

At trial, Detective Glaser identified the firearm as a model 77 Ruger .22-caliber rifle. It was not in the condition that one would expect for a standard weapon. The front stock support arm and the rear stock, which are helpful in holding and aiming the firearm, were missing. There was no bullet in the chamber.

During his testimony, Detective Glaser identified the barrel of the firearm. When the firearm was found, the bolt was inside it, where it belonged. Glaser pointed out for the jury the chamber area and the area of the firearm where the mechanics of the gun were housed. He also showed how a shell could be inserted and the bolt closed afterward. He found that he was unable to move the safety. If operating properly, the safety should slide forward toward the trigger.

The officers had been informed that defendant was using an ATV to drive back and forth from his trailer to the house of his father, Franklin Arnold (Arnold). During the search, Detective Glaser spoke to defendant's girlfriend, Rebecca Youngblood, who confirmed defendant's use of the ATV. The officers proceeded to Arnold's house and discovered the stolen ATV. It had been taken from a farm about a quarter-mile away.

When defendant arrived at Arnold's house, Detective Glaser questioned him about the ATV while Detective Faille spoke with Arnold. Defendant did not want to talk to Glaser. As defendant was seated in the back of a patrol car following his arrest, he told Arnold he was sorry, "[b]ecause [he] knew [the ATV] was stolen when [he] bought it."

Youngblood acknowledged having told the officers that the rifle they found belonged to defendant. She denied having knowledge of an ATV.

Defendant's stepmother, Martha Vaughn, was present on the day he was arrested. She recalled that he had been riding an ATV daily around their property for months. He told her that he had borrowed the ATV from neighbors.

The general manager of the farm testified that defendant had not been given permission to use the ATV.

*Defense*

Arnold testified that he had frequently seen defendant riding the ATV. Arnold recounted his version of the conversation with defendant while he was seated in the patrol car. According to Arnold, defendant said, " 'They think I know the four-wheeler was stolen.' " On cross-examination, Arnold testified that he responded, " 'I thought you told me that the Windsors had let you borrow it,' " and that defendant replied, "No," even though he had previously told Arnold that he had borrowed the ATV. On redirect examination, Arnold testified that defendant did not respond to his question about borrowing the ATV.

Arnold testified that the Ruger .22-caliber rifle was a gun he had owned in 1990. It was kept in a barn that burned. Arnold found the remains of the gun when he cleaned up the debris from the fire.

*Prosecution Rebuttal*

Vaughn testified that, immediately after the patrol car took defendant away, Arnold told her that defendant *knew* the ATV was stolen and that he bought it from the person who had stolen it.

Detective Faille confirmed that he had heard defendant tell his father that he *knew* the ATV was stolen when he bought it. Faille also testified that he had heard Youngblood admit that she had received bruises to her knees as a result of a fall off of the ATV.

*Defense Surrebuttal*

Arnold denied having told Vaughn that defendant knew the ATV was stolen.

DISCUSSION

*I*

Defendant contends his count 3 conviction must be reversed because there was insufficient evidence that he possessed a firearm. Specifically, he claims there was insufficient evidence "that the item in [his] possession contained a receiver." In the alternative, he claims count 3 must be reversed because the jury was given insufficient instruction as to what constitutes a firearm. Neither claim has merit.

" 'To determine sufficiency of the evidence, we must inquire whether a rational trier of fact could find defendant guilty beyond a reasonable doubt. In this process we must view the evidence in the light most favorable to the judgment and presume in favor of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. To be sufficient, evidence of each of the essential elements of the crime must be substantial and we must resolve the question of sufficiency in light of the record as a whole.' " (*People v. Carpenter* (1997) 15 Cal.4th 312, 387 [63 Cal.Rptr.2d 1, 935 P.2d 708] (*Carpenter*), quoting *People v. Johnson* (1993) 6 Cal.4th 1, 38 [23 Cal.Rptr.2d 593, 859 P.2d 673]; see *Jackson v. Virginia* (1979) 443 U.S. 307, 317–320 [61 L.Ed.2d 560, 99 S.Ct. 2781].)

Count 3 alleged a violation of the Dangerous Weapons Control Law. (§ 12000 et seq.) Section 12021, subdivision (a)(1), provides in relevant part: "Any person who has been convicted of a felony . . . who owns, purchases, receives, or has in his or her possession or under his or her custody or control any firearm is guilty of a felony."

Section 12001 defines the term "firearm." Subdivision (b) provides: "As used in this title, 'firearm' means any device, designed to be used as a weapon, from which is expelled through a barrel a projectile by the force of any explosion or other form of combustion."

Section 12001, subdivision (c), adds: "As used in Sections *12021*, 12021.1, 12070, 12071, 12072, 12073, 12078, 12101, and 12801 of this code, and Sections 8100, 8101, and 8103 of the Welfare and Institutions Code, the term 'firearm' *includes* the frame or receiver of the weapon." (Italics added.) "A *receiver* is 'the metal frame in which the action of a firearm is fitted and to which the breech end of the barrel is attached.' [Citation.]" (*Harrott v. County of Kings* (2001) 25 Cal.4th 1138, 1147, fn. 6 [108 Cal.Rptr.2d 445, 25 P.3d 649] (*Harrott*), original italics.) An "action" is "an operating mechanism" or "the manner in which a mechanism . . . operates." (Merriam-Webster's 10th Collegiate Dict. (2001) p. 11.)

" 'Includes' is 'ordinarily a term of enlargement rather than limitation.' [Citation.] The 'statutory definition of a thing as "including" certain things does not necessarily place thereon a meaning limited to the inclusions.' [Citation.]" (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 774 [117 Cal.Rptr.2d 574, 41 P.3d 575]; see *Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 216–217 [46 Cal.Rptr.3d 73, 138 P.3d 220]; *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 717 [3 Cal.Rptr.3d 623, 74 P.3d 726].)

■ Under this principle of statutory construction, subdivision (c) of section 12001 *enlarges*, rather than limits, the definition of "firearm" in subdivision (b). This means that, for purposes of section 12021, possession of a "frame or receiver" is *sufficient* to constitute possession of a "firearm," *regardless* of whether a "device" with a "barrel" is also possessed.

Conversely, section 12001, subdivision (c)'s definition of a firearm as "including" a "frame or receiver" does not place upon the word "firearm" a meaning "limited to" devices that include frames or receivers. (*Flanagan v. Flanagan, supra*, 27 Cal.4th at p. 774.) Thus, section 12001, subdivision (c), does *not* mean that for purposes of section 12021, the "device" described in subdivision (b) *must* include a "frame or receiver" as well as a barrel. Although possession of a receiver is sufficient, it is not necessary to a conviction.

■ At trial, Detective Glaser identified the barrel of the burned and possibly melted firearm. Defendant concedes that the weapon "consisted of the bare metal part or the barrel of the weapon." He claims "there is

insufficient evidence that [he] possessed the firing mechanism or action portion of the receiver," but no such evidence was necessary.[2]

*Gailord*, on which the Attorney General relies, does not require a different result. In *Gailord*, the defendants faced enhancements pursuant to sections 12022 and 12022.5, not prosecution under section 12021. (*Gailord, supra*, 13 Cal.App.4th at pp. 1644–1645.) Because neither section 12022 nor 12022.5 is listed in section 12001, subdivision (c), its provisions did not apply. (13 Cal.App.4th at p. 1650.) The evidence in *Gailord* "was conflicting" as to whether one of the defendants "possessed and used only" a receiver or "the receiver together with" the barrel. (*Id.* at p. 1650.) Because only the section 12001, subdivision (b), definition, and not the subdivision (c) definition, applied, the narrow legal issue was whether the defendant possessed *the barrel* (13 Cal.App.4th at p. 1651); that he possessed the receiver was uncontested.

However, because possession of the receiver was *factually* undisputed, *Gailord* accepted the defendants' argument and agreed that "the jury instructions read to the jurors in this case did not adequately apprise the jury of the necessity of determining whether [a defendant] possessed the barrel assembly *in addition to* the receiver so as to comply with" section 12001, subdivision (b). (*Gailord, supra*, 13 Cal.App.4th at p. 1650, italics added.) Read in context, the phrase "in addition to" does not mean, as the Attorney General here suggests, that "a defendant needs to possess both a barrel and a receiver or frame in order to be guilty of illegally possessing a firearm."

The present case is the factual and legal opposite of *Gailord*: Defendant's offense *is* listed in subdivision (c), but his possession of the *receiver* is disputed; whereas his possession of the *barrel,* as required by subdivision (b), is undisputed. Nothing in *Gailord* suggests the evidence in this case was insufficient.

Defendant contends the fire modified the rifle in such a way that there is no substantial evidence it fell within the intended definition of a "firearm." We disagree.

Our Supreme Court has noted an evident legislative intent to "prohibit possession by an ex-felon of an inoperable . . . firearm, that is, one which

---

[2] As we have noted, the receiver is *the metal frame in which the action is fitted. (Harrott, supra*, 25 Cal.4th at p. 1147, fn. 6.) Thus, the action is *fitted into* the receiver or frame; it is not a "portion of" the frame, as defendant's argument suggests.

At trial, Detective Glaser identified the barrel, trigger guard, trigger, slide, bolt and firing pin, and showed where the bolt slides "along the rim" of a portion of the rifle. That portion is the receiver. Thus, Detective Glaser's testimony may be understood as suggesting that defendant's rifle had a frame or receiver within the meaning of section 12001, subdivision (c). However, we decline to rest our holding solely upon that basis.

although designed to be used as a weapon is presently incapable of being fired." (*People v. Nelums* (1982) 31 Cal.3d 355, 358 [182 Cal.Rptr. 515, 644 P.2d 201].) Defendant claims the rifle fell outside this rule because it "did not give the appearance of having shooting capability given its description as nothing more than the barrel of a former rifle, melted and distorted, missing the front and rear stocks and firing mechanism."[3] However, the record suggests that a simple expedient, such as covering the burned portion with an article of clothing or other object from which the barrel would protrude, could obscure the fire damage and allow a victim to perceive the object as a working rifle. We reject defendant's contention that the "purposes behind prohibiting the possession of an inoperable firearm" do not apply to his rifle. The evidence was sufficient to support the count 3 conviction. (*Carpenter, supra*, 15 Cal.4th at p. 387.)

Defendant contends in the alternative that count 3 must be reversed because the trial court breached its duty to further instruct the jury sua sponte on the definition of "firearm." He claims CALJIC No. 12.48, which defines "firearm," was insufficient because it allowed the jury to find his "possession of the barrel and bolt sufficient without specifically finding that *in addition* to these items [he] *also* possessed the receiver portion of the weapon containing the crucial firing mechanism."[4] (Original italics.) We disagree.

For the reasons we have stated, the jury was not required to find that defendant "possessed the receiver portion of the weapon." Nor was his trial counsel ineffective for having failed to request further instruction on section 12001, subdivision (c). As we have explained, possession of a frame or receiver is *sufficient* (albeit not necessary) for purposes of section 12021, subdivision (a)(1). On these facts, an instruction on "frame or receiver" would simply have offered the jury an alternate route to a conviction.

*II–V**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[3] We have rejected defendant's contention that the firing mechanism was missing. The trigger, slide, bolt and firing pin all were present. (See fn. 2, *ante*.)

[4] The jury was instructed with CALJIC No. 12.48, as follows: "The word 'firearm' means any device designed to be used as a weapon from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion whether operable or not. The word 'firearm' also includes the frame or receiver of any such weapon. The receiver is the metal frame in which the action of a firearm is fitted and to which the breech end of the barrel is attached."

*See footnote, *ante*, page 1408.

## DISPOSITION

Defendant's conviction on count 4 is reversed. His remaining convictions are affirmed. The matter is remanded for resentencing consistent with this opinion.

Scotland, P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 11, 2007, S149844. George, C. J., did not participate therein.