Filed 11/28/16

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | , ) | BR 052691 |
|    Plaintiff and Respondent, | ) | Alhambra Trial Court |
| v. | ) | No. 5AH04272 |
| JUAN CARRANZA et al., | ) | |
|    Defendants and Appellants. | ) | **OPINION** |

APPEALS from judgments of the Superior Court of Los Angeles County, consolidated for purposes of oral argument and rendering this court's opinion:

BR 052691, *People v. Juan Carranza*, Alhambra Trial Court, Jon R. Takasugi, Judge (No. 5AH04272).

BR 052709, *People v. Oscar Tapia*, Downey Trial Court, Sheryl Beasley, Commissioner (No. 5DY07822).

BR 052764, *People v. Leand You*, Alhambra Trial Court, Carol W. Eswick, Judge (No. 5AH04642).

BR 052828, *People v. Daniel Lebron*, Alhambra Trial Court, Carol W. Eswick, Judge (No. 6AM00572).

BR 052829, *People v. Jaime Casas*, Alhambra Trial Court, Carol W. Eswick, Judge (No. 6AM00662).

1

BR 052846, *People v. William Medina*, Alhambra Trial Court, Carol W. Eswick, Judge (No. 6AM01130).

BR 052853, *People v. Ruby Navarro*, Alhambra Trial Court, Carol W. Eswick, Judge (No. 6AM00921).

The judgments are, and each of them, reversed.

Eric Cioffi, Esq. for Defendant and Appellant in No. BR 052691.

Richard Scott Lysle, Esq. for Defendant and Appellant in No. BR 052709.

Andrea Ilana Keith, Esq. for Defendant and Appellant in No. BR 052764.

Donna L. Jones, Esq. for Defendant and Appellant in No. BR 052828.

Kenneth Neil Hamilton, Esq. for Defendant and Appellant in No. BR 052829.

Geoffrey Ojo, Esq. for Defendant and Appellant in No. BR 052846.

Roya Milder, Esq. for Defendant and Appellant in No. BR 052853.

Jackie Lacey, District Attorney of Los Angeles County, and Roberta T. Schwartz and Phyllis C. Asayama, Deputy District Attorneys, for Plaintiff and Respondent.

# I. *INTRODUCTION*

The trial courts in these consolidated appeals applied defendants' custody credits to the total fines imposed, which included base fines and penalty assessments, rather than solely to the base fines. This resulted in defendants owing greater amounts, and requiring they spend more time in custody and perform more community service, to satisfy their fines than if the courts had applied their credits only toward the base fines. As discussed below, we reverse and remand for recalculation of the credits.

Assembly Bill No. 1375 (AB 1375), effective January 1, 2016, increased the value of defendants' credits to be applied towards their fines from a minimum of $30 a day to a minimum of $125 per day. But, the bill did not change the requirement in Penal Code sections 1205, subdivision (a), and 2900.5, subdivision (a),[1] that credits be applied to all fines, including penalty assessments, as provided by *People v. McGarry* (2002) 96 Cal.App.4th 644, 647 (*McGarry*). At the time of each defendant's sentencing, courts were required to use the *McGarry* method based on the total fines imposed, including penalty assessments, rather than applying credits solely to the base fines. Our interpretation of AB 1375 is compelled by fundamental rules of statutory construction and is not unconstitutional.

Nonetheless, the Governor on September 28, 2016, signed into law Assembly Bill No. 2839 (AB 2839), requiring that courts apply the $125 per day custody credit solely to base fines. AB 2839 was not enacted as emergency legislation—which would have become effective upon being signed—and the statute did not expressly state it should be applied to defendants who, as in the present cases, were sentenced after January 1, 2016, but prior to when AB 2839 was signed. However, the legislative history of AB 2839 makes very clear that the new law's provisions apply to defendants who were sentenced during this interim period. Moreover, because the new law lessens defendants' punishment, the rule of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), requires that we apply the law retroactively.

# II. *BACKGROUND*

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

Defendants Juan Carranza, Oscar Tapia, Leand You, Daniel Lebron, Jaime Casas, William Medina, and Ruby Navarro pled no contest to misdemeanor offenses.[2] Carranza, Lebron, Casas, and Navarro each pled no contest to one count of driving with a blood-alcohol content of 0.08 percent or above (Veh. Code, § 23152, subd. (b)). Tapia pled no contest to driving with a suspended license (Veh. Code, § 14601.2, subd. (b)). You pled no contest to hit-and-run driving (Veh. Code, § 20002, subd. (a)). Medina pled no contest to alcohol-related reckless driving (Veh. Code, § 23103.5). Pursuant to plea bargains with the People, other charges filed against defendants in their cases were dismissed.

The courts suspended imposition of sentence, placing defendants on probation. The courts also ordered defendants to pay fines, penalty assessments, and other fees. Defense counsel argued in each of the cases that the defendant's $125 per day custody credits should be calculated based on the base fines, not on the total fines which were imposed, but the courts rejected the arguments.

Carranza, Lebron, Casas, and Navarro were ordered to pay fines of $390 plus penalty assessments and fees; Tapia was ordered to pay a $500 fine plus penalty assessments and fees; You was ordered to pay a $200 fine plus penalty assessments and fees; and Medina was ordered to pay a fine of $145 plus penalty assessments and fees. The courts awarded Carranza, Casas, Navarro, You and Medina one day they had each served in custody, awarded Lebron two days in custody, and ordered that their $125 per day credits be applied to the base fine and penalty assessments. Tapia did not have any credit for time in custody, but the court calculated how much time in jail or community service he would have to serve to satisfy his fine based on the total fine imposed instead of solely on the base fine.

Defendants filed timely appeals from the sentences imposed. (§ 1466, subd. (b)(1).)

### III. *DISCUSSION*

The first question we must answer is whether the trial courts complied with the relevant statutes as amended by AB 1375 at the time of sentencing. As we conclude the courts did so

---

[2]The entry of plea and sentencing occurred as follows: Carranza, January 15, 2016; Tapia, February 3, 2016; You, March 3, 2016; Lebron, March 15, 2016; Casas, April 12, 2016; Medina and Navarro, April 22, 2016.

4

comply, we proceed to answer a second question, whether reversal is nonetheless warranted due to AB 2839. We answer this question in the affirmative.

The issues analyzed pertain to statutory construction and interpretation. Accordingly, we exercise de novo review. (*People v. Gibson* (2016) 2 Cal.App.5th 315, 326.) We also apply the de novo standard of review to questions of constitutional law. (*In re Brian J.* (2007) 150 Cal.App.4th 97, 124.)

## A. AB 1375

### 1. *The issue.*

Criminal defendants are entitled to have the time they have served in custody credited to reducing a fine ordered by the court. (§ 2900.5, subd. (a).) Also, defendants may elect to serve time in custody in order to satisfy a fine. (§ 1205, subd. (a).) Prior to 2016, the court was required to provide a defendant a minimum credit of $30 per day for each day served in custody to be applied to satisfying a fine. (See former §§ 1205, subd. (a), 2900.5, subd. (a).) AB 1375 increased the amount that a defendant must receive for each day served in custody to a minimum of $125.

Defendants argue that, in addition to increasing the amount of credit to be awarded, the Legislature required in AB 1375 that the credit must be applied to the base fine alone, not the base fine and its accompanying penalty assessments. The importance of this distinction is illustrated by converting the fine for driving with a blood-alcohol content of 0.08 percent or above which was imposed on defendants Carranza, Lebron, Casas, and Navarro.

In these cases, the courts imposed the minimum $390 base fine pursuant to Vehicle Code section 23538, subdivision (a)(1), and added an additional $1,396 in penalty assessments.[3] For purposes of this calculation, the total fine amounted to $1,786.[4] If only the $390 base fine were converted to custody credit at the rate of $125 per day, defendants would

---

[3]Sections 1463.14, subdivision (b) ($33 county alcohol testing penalty), 1464 ($390 state penalty assessment), 1465.7 ($78 criminal fine surcharge penalty); Government Code sections 70372 ($195 state court construction penalty), 76000 ($273 county penalty assessment), 76000.5 ($78 emergency medical services penalty assessment), 76000.10, subdivision (c)(1) ($4 county emergency medical air transportation penalty), 76104.6 ($39 DNA testing penalty assessment), 76104.7 ($156 DNA ID penalty assessment); Vehicle Code sections 23645 ($50 alcohol abuse education and prevention penalty assessment), 23649 ($100 alcohol and drug program penalty assessment).

have had to serve three days in custody to satisfy the fine; if the $1,786 total fine was used in the calculation at the rate of $125 per day, defendants would have had to serve 14 days in custody to satisfy the fine.[5]

### 2. Fines and penalty assessments must be included.

Our objective is to discern the Legislature's intent in enacting AB 1375. "'We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.]' [Citation.]" (*John v. Superior Court* (2016) 63 Cal.4th 91, 95-96.) We give the words a "plain and commonsense meaning. [Citation.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) In doing so, ""we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question '"in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]"'" (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537.)

As amended by AB 1375, section 2900.5, subdivision (a), provided, "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement pursuant to Section 4019, and days served in home detention pursuant to Section 1203.016 or 1203.018, shall be credited upon his or her term of imprisonment, or credited to *any fine, including, but not limited to, base fines*, on a proportional basis, that may be imposed, at the rate of not less

---

[4]A $150 restitution fine (§ 1202.4) was also added, but this fine is not used in the computation because the Legislature in 2013 deleted the fine from section 2900.5, subdivision (a). (See *People v. Morris* (2015) 242 Cal.App.4th 94, 100.) Also, other fees and assessments which were imposed, including a $30 criminal conviction assessment (Gov. Code, § 70373), and a $40 court operations assessment (§ 1465.8, subd. (a)(1)), were not used in the computation, as they are not considered "penalties" within the meaning of section 2900.5, subdivision (a). (See *People v. Robinson* (2012) 209 Cal.App.4th 401, 407 (*Robinson*).)

[5]Fractions in the division of the sums are rounded down, because there is no authority which allows a court to order a defendant to serve a partial day in custody, and if the numbers were rounded upward, the requirement to give a defendant a minimum of $125 per day would not be complied with. (See §§ 1205, subd. (a), 2900.5, subd. (a).)

than one hundred twenty five dollars ($125) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served. In any case where the court has imposed both a prison or jail term of imprisonment and a fine, any days to be credited to the defendant shall first be applied to the term of imprisonment imposed, and thereafter the remaining days, if any, shall be applied to the fine, including, but not limited to, base fines, on a proportional basis." (Italics added.)

Section 1205, subdivision (a), as amended by AB 1375, provided, "A judgment that the defendant pay a fine, with or without other punishment, may also direct that he or she be imprisoned until the fine is satisfied and may further direct that the imprisonment begin at and continue after the expiration of any imprisonment imposed as a part of the punishment or of any other imprisonment to which the defendant may have been sentenced. The judgment shall specify the term of imprisonment for nonpayment of *the fine*, which shall not be more than one day for each one hundred twenty five dollars ($125) of *the fine*, nor exceed the term for which the defendant may be sentenced to imprisonment for the offense of which he or she has been convicted. A defendant held in custody for nonpayment of a fine shall be entitled to credit on the fine for each day he or she is held in custody, at the rate specified in the judgment. When the defendant has been convicted of a misdemeanor, a judgment that the defendant pay a fine may also direct that he or she pay the fine within a limited time or in installments on specified dates, and that in default of payment as stipulated he or she be imprisoned in the discretion of the court either until the defaulted installment is satisfied or until the fine is satisfied in full; but unless the direction is given in the judgment, the fine shall be payable." (Italics added.)

The plain words of section 2900.5, subdivision (a), as amended by AB 1375, do not state that a defendant's credit must be computed based solely on the base fine. Indeed, the statute's words expressly provide custody is to be "credited to any fine, including, but not limited to, base fines." "The term 'fine' in section 2900.5, subdivision (a) includes 'state and county penalty assessments.'" (*Robinson*, *supra*, 209 Cal.App.4th at pp. 406-407, quoting *McGarry*, *supra*, 96 Cal.App.4th at p. 648, italics omitted.) The use of the term "including" is commonly understood to expand the items being considered (see *People v. Arnold* (2006) 145 Cal.App.4th

7

1408, 1414), and in combination with the words "but not limited to, base fines," the statute has a pellucid meaning: a defendant's custody credits must be applied against all fines and penalty assessments, not solely base fines.

Section 1205, subdivision (a), as amended by AB 1375, also does not state a defendant's custody credits must be computed based solely on the base fine. This section states in this regard, "The judgment shall specify the term of imprisonment for nonpayment of the fine, which shall not be more than one day for each one hundred twenty five dollars ($125) of the fine . . . ." As discussed above, for purposes of section 2900.5, subdivision (a), a "fine" includes "'state and county penalty assessments.' [Citation.]" (*Robinson*, *supra*, 209 Cal.App.4th at pp. 406-407.) As both sections 1205, subdivision (a), and 2900.5, subdivision (a), relate to the same subject matter—applying custody credits against defendants' fines—the provisions are in pari materia, and their terms should be construed in the same manner. (See *People v. Villatoro* (2012) 54 Cal.4th 1152, 1161.) Also, giving the word "fine" the same meaning in both statutes is compelled by our duty to harmonize the sections "'"both internally and with each other, to the extent possible." [Citation.]' [Citation.]" (*People v. Loeun* (1997) 17 Cal.4th 1, 9.)

3.      *Custody credits were correctly applied to all fines under McGarry.*

At the time AB 1375 was enacted, the method by which custody credits were applied was set forth by the Court of Appeal in *McGarry*, and this was the method used by the trial courts in the present cases. The courts proceeded correctly, as the Legislature in enacting AB 1375 did not alter the *McGarry* method of custody credit computation.

In *McGarry*, the defendant was convicted of two misdemeanors, and the trial court imposed the maximum 180-day sentence for one crime, and imposed and stayed the sentence on the second crime under section 654. The court imposed a $2,000 base fine on one of the charges, and added $3,400 in penalty assessments. Defendant's custody credits exceeded the 180-day jail sentence by 114 days, and the court credited defendant with $3,420 (114 days multiplied by the then-specified minimum rate of $30 per day). The court applied this credit first to the base fine, and the remaining $ 1,420 toward the $3,400 penalty assessments. (*McGarry*, *supra*, 96 Cal.App.4th at pp. 646-647.)

8

The *McGarry* court reversed the sentence, holding that the trial court erred by failing to apply the defendant's credits to the entire fine, rather than applying it first to the base fine with the remainder going to the penalty assessments. (*McGarry*, *supra*, 96 Cal.App.4th at p. 647.) *McGarry* determined that "the 'fine . . . including, but not limited to, base fines and restitution fines' referred to in section 2900.5(a) also encompasses state and county penalty assessments." (*Id*. at p. 648.) Hence, custody credits had to be computed with regard to the entire fine, not the piecemeal application employed by the trial court. (*Ibid*.)[6]

The court in *McGarry* reasoned that applying credits to the fine and penalty assessments was required because, "First, section 2900.5(a) itself describes these terms as 'including, but not limited to, base fines and restitution fines.'. . . [¶] Second, section 1463, subdivision (*l*), pertaining to the distribution of all fines and forfeitures imposed and collected for crimes, provides: '"Total fine or forfeiture" means the total sum to be collected upon a conviction . . . . It may include, but is not limited to, the following components as specified for the particular offense: [¶] (1) The "base fine" upon which the state penalty and additional county penalty is calculated. [¶] (2) The "county penalty" required by Section 76000 of the Government Code. [¶] . . . [¶] (5) The "state penalty" required by Section 1464.' [¶] And third, reading the terms in context, we do not discern a legislative intent to give the term 'any fine' in the portion of section 2900.5(a) pertaining to situations involving imprisonment or a fine a broader meaning than the term 'the fine' in the part of the statute addressing cases involving imprisonment and a fine. There would be no reason to draw such a distinction. Rather, the same broad meaning should apply in both cases. Hence, the 'fine . . . including, but not limited to, base fines and

_____

[6]The *McGarry* court further held that application of custody credits towards a total fine must be done proportionally, and set forth a mathematical formula for the computation: "1. First, the trial court should have determined the amount of the total fine. . . . [¶] 2. Next, the trial court should have calculated the proportion that each component of the total fine bore to the total fine. To do this, it should have divided each component of the total fine by the total fine . . . . [¶] 3. Next, the trial court should have multiplied each of the four proportions by the [defendant's] monetary credit, to determine how much of each component of the total fine was satisfied by the credit . . . . [¶] 4. Next, the trial court should have subtracted each allocation from the corresponding component of the total fine imposed by the court, to determine how much of each component remained unsatisfied by the allocations . . . ." (*McGarry*, *supra*, 96 Cal.App.4th at pp. 648-650.)

restitution fines' referred to in section 2900.5(a) also encompasses state and county penalty assessments." (*McGarry*, *supra*, 96 Cal.App.4th at p. 648, italics omitted.)

*McGarry* dealt with allocating a defendant's custody credits to a fine under section 2900.5, subdivision (a). But, the opinion stated that its calculation method "would also apply to postsentence service of time in custody in lieu of fine" pursuant to section 1205, subdivision (a). (*McGarry*, *supra*, 96 Cal.App.4th at p. 652, italics omitted.) Further, given sections 1205 and 2900.5 are in pari materia, it follows that the court was required to use the *McGarry* computation method when calculating how much time a defendant could elect to serve in custody in order to satisfy a fine under section 1205, subdivision (a).[7]

Defendants argue the Legislature, when it enacted AB 1375, intended to abrogate the *McGarry* method of calculating credits against the entire fine. Defendants maintain the intent was to require that courts apply the new $125 credit solely towards the base fine, thus eliminating the base fine and leaving no penalty assessments to be paid. Yet, not an iota of this intent is apparent in the text of the statutes which were amended by AB 1375.

As discussed previously, the Legislature in amending sections 1205 and 2900.5 left intact provisions requiring that credits be calculated using *all* fines imposed, not just the base fines. Moreover, other than providing that "days to be credited to the defendant shall first be applied to the term of imprisonment imposed, and thereafter the remaining days, if any, shall be applied to the fine, including, but not limited to, base fines, on a proportional basis" (§ 2900.5, subd. (a)), the Legislature did not provide any direction whatsoever regarding how credits were to be allocated. Inserting language into the statutes as advocated by defendants would "'violate[] the cardinal rule of statutory construction that courts must not add provisions to statutes.' [Citation]." (*People v. Guzman* (2005) 35 Cal.4th 577, 587.)

Defendants maintain that prior to AB 1375, trial courts did not use the *McGarry* method for calculating credits, and instead simply allocated credits towards the base fine without taking

___

[7]Community service in lieu of paying a fine is authorized when a defendant is granted probation. (§ 1205.3.) This statute does not indicate what daily monetary value a court must assign to a defendant's community service. However, the trial courts in the consolidated cases set the value of defendants' daily community service work at $125 per day, and consistent with *McGarry*, divided the total fines imposed by this value to determine how many days of community service were owed in lieu of paying the fines.

into consideration any penalty assessments. Defendants point out trial courts started using the *McGarry* method after AB 1375 was enacted, and the courts in some of the consolidated cases acknowledged they began using *McGarry* in this manner. However, the *McGarry* method was the only one approved by an appellate court for calculating credits, and trial courts were bound to comply on this matter. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

"When a statute has been construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute. [Citation.]" (*People v. Bouzas* (1991) 53 Cal.3d 467, 475 (*Bouzas*).) "'It is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them.' [Citations.]" (*People v. Slaughter* (1984) 35 Cal.3d 629, 640 (*Slaughter*).) The "judicial decisions" referenced in *Bouzas* and *Slaughter*, as well as many other cases that have repeated the principle that the Legislature is deemed to know how statutes it seeks to amend have been interpreted, were published appellate opinions, not the practices of individual trial courts.

As the *McGarry* method was the applicable law by which all inferior tribunals were bound, we presume the Legislature approved AB 1375 knowing this method would be used to calculate credits. The clear purpose of the bill, as discerned from the text of the amendments enacted, was to increase the amount of credit from $30 to $125, and to concomitantly reduce the amount of time in custody, or—by application of section 1205.3—the community service days, required to satisfy a fine. This purpose was accomplished, because even using the *McGarry* method and applying credits towards the entire fine, with a $125 valuation, defendants serve less time and are required to work fewer days performing community service to satisfy a fine than when the specified value was $30.[8]

---

[8]For example, if the total fines of $1,786 in the cases of the defendants convicted of violating Vehicle Code section 23152, subdivision (b), had been converted to custody time at the previous rate of $30 per day, defendants would have had to serve 59 days in custody to satisfy the fines. As previously

11

Since the text of the statutes amended by AB 1375 is clear and unambiguous, resort to sources extraneous of the text, such as its legislative history, is not appropriate. "'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" [Citations.]'" (*People v. Mays* (2007) 148 Cal.App.4th 13, 29.)

Nonetheless, an examination of the legislative analyses prepared as AB 1375 was considered reveals no discussion as to the method by which credits were to be computed, or whether only the base fine was to be utilized in the computation. The only shred of information on this issue is found in the analyses' discussion of the financial consequences of the legislation, which states, "[I]t is not fiscally responsible to credit defendants only $30 per day in lieu of fine payments. At an average cost of $100 per day to house somebody in a California county jail, it would take 10 days and cost $1000 to house a person paying off a $300 fine. At the more equitable rate of $125 per day, it would only take 3 days and cost about $300." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1375 (2015-2016 Reg. Sess.) as introduced Feb. 27, 2015, pp. 3-4; see also Sen. Com. on Public Safety, Assem. Bill No. 1375 (2015-2016 Reg. Sess.) as introduced Feb. 27, 2015, pp. 3-4 [same].) At most, these analyses indicate the Legislature overestimated the bill's cost savings, as it relied on a computation method that used the base fine alone, which was unauthorized by *McGarry*. This possible misunderstanding is insufficient to require us to insert language into the statutes in order to comply with a legislative intent which is otherwise silent.[9]

4.      *Constitutional contentions.*

Contrary to contentions raised by defendant Lebron on appeal, there are no constitutional impediments to our interpretation of AB 1375.

---

mentioned, under section 1205, subdivision (a), as amended by AB 1375, these defendants would have had to serve 14 days to satisfy the fines.

[9]Adding words to the statutes is especially inappropriate as other legislative analyses tend to show the Legislature contemplated credits would be applied towards both the base fine and penalty assessments. (See, e.g., Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1375 (2015-2016 Reg. Sess.) as introduced Feb. 27, 2015, pp. 2-3 ["By raising the rate at which defendants can pay off fines *and fees* by converting them to jail time, this bill may help incentivize defendants to address delinquent debt"; italics added].)

Lebron maintains the separation of powers doctrine is being violated by a construction of the statutes requiring that the custody credits be applied to the entire fine, because this construction is contrary to the legislative intent and thus encroaches on the power of the Legislature. Article III, section 3 of the California Constitution provides that "[t]he powers of state government are legislative, executive, and judicial." The separation of powers "doctrine . . . limit[s] the authority of one of the three branches of government to arrogate to itself the core functions of another branch. . . . [T]he doctrine is violated when the actions of one branch defeat or materially impair the inherent functions of another. [Citations.]" (*Steen v. Appellate Division of Superior Court* (2014) 59 Cal.4th 1045, 1053.)

The defense argument fails, as it is the function of the judiciary to interpret statutes. (See *People v. Mendoza* (2015) 241 Cal.App.4th 764, 790 ["'[t]he ultimate interpretation of a statute is an exercise of the judicial power'"].) The interpretation we provide is in accord with the Legislature's intent, as clearly expressed in the text of the statutes.

Lebron also argues our interpretation of the statutes would violate "the cruel or unusual punishment prohibitions found in the California and United States Constitutions," "both on its face and as applied to [defendant]." "'"'The cruel and unusual punishments clause of the Eighth Amendment to the United States Constitution prohibits the imposition of a penalty that is disproportionate to the defendant's "personal responsibility and moral guilt." [Citations.] Article I, section 17 of the California Constitution separately and independently lays down the same prohibition.'"' [Citations.]' [Citation.]" (*People v. Mendoza* (2016) 62 Cal.4th 856, 911 (*Mendoza*); see *In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*) [a sentence may violate the California Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity"].)

Lebron did not raise in the trial court the argument that his sentence was unconstitutionally cruel and unusual *as applied to him* (and none of the other defendants in the consolidated appeals made this argument with respect to their sentences); hence the argument is forfeited. (See *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.) We reject the argument that the statute is unconstitutional *on its face*. There is no indication that requiring a court to apply custody credits to all the fines, rather than just to the base fine, results in "disproportionate"

13

punishment (*Mendoza*, *supra*, 62 Cal.4th at p. 911) or that it "shocks the conscience and offends fundamental notions of human dignity" (*Lynch*, *supra*, 8 Cal.3d at p. 424).

B.    AB 2839

   1.    *The amendments.*

The Legislature, in a swift follow-up to AB 1375, enacted AB 2839. When the latter bill was signed into law by the Governor in September 2016, the Legislature provided, in unequivocal and clear language, that courts must use the base fine in applying defendants' custody credits, not the total fine including penalty assessments.

As amended by AB 2839, section 2900.5, subdivision (a), now provides, "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement pursuant to Section 4019, and days served in home detention pursuant to Section 1203.016 or 1203.018, shall be credited upon his or her term of imprisonment, or credited to any *base fine* that may be imposed, at the rate of not less than one hundred *twenty-five* dollars ($125) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served. In any case where the court has imposed both a prison or jail term of imprisonment and a fine, any days to be credited to the defendant shall first be applied to the term of imprisonment imposed, and thereafter the remaining days, if any, shall be applied to the *base fine*. *If an amount of the base fine is not satisfied by jail credits, or by community service, the penalties and assessments imposed on the base fine shall be reduced by the percentage of the base fine that was satisfied*." (Italics added to indicate changes from previous statute.)

As amended by AB 2839, section 1205, subdivision (a), currently provides, "A judgment that the defendant pay a fine, with or without other punishment, may also direct that he or she be imprisoned until the fine is satisfied and may further direct that the imprisonment begin at

14

and continue after the expiration of any imprisonment imposed as a part of the punishment or of any other imprisonment to which the defendant may have been sentenced. The judgment shall specify the term of imprisonment for nonpayment of the fine, which shall not be more than one day for each one hundred *twenty-five* dollars ($125) of the *base* fine, nor exceed the term for which the defendant may be sentenced to imprisonment for the offense of which he or she has been convicted. A defendant held in custody for nonpayment of a fine shall be entitled to credit on the fine for each day he or she is held in custody, at the rate specified in the judgment. When the defendant has been convicted of a misdemeanor, a judgment that the defendant pay a fine may also direct that he or she pay the fine within a limited time or in installments on specified dates, and that in default of payment as stipulated he or she be imprisoned in the discretion of the court either until the defaulted installment is satisfied or until the fine is satisfied in full; but unless the direction is given in the judgment, the fine shall be payable. *If an amount of the base fine is not satisfied by jail credits, or by community service, the penalties and assessments imposed on the base fine shall be reduced by the percentage of the base fine that was satisfied.*" (Italics added to indicate changes from previous statute.)

2.      *Retroactivity.*

The People do not dispute that under the current versions of sections 1205, subdivision (a), and 2900.5, subdivision (a), a court would be required to apply defendants' credits solely to the base fine. The result would unquestionably result in lesser punishment than was imposed by courts using the *McGarry* method of computation.

The sentences in the consolidated appeals vividly demonstrate the reductions that would ensue. In the cases of Carranza, Lebron, Casas, and Navarro, defendants could satisfy the $390 fine, at a rate of $125 a day, by serving three days in custody or, assuming courts continue to apply the same credits under section 1205.3 as provided by newly amended sections 1205 and 2900.5, performing three days of community service.[10] Tapia would have to serve four days in custody or perform four days of community service to satisfy his $500 fine. Medina would have to serve one day in custody or perform one day of community service to satisfy his $145

_____

[10]As previously discussed, fractions in the division of the sums are rounded downward.

fine, and You would also have to serve one day in custody or perform one day of community service to satisfy his $200 fine. Defendants with custody credits would have the $390 base fine reduced by $125 per day, and would only owe the remainder of the base fine plus its accompanying penalty assessments. Sentences which were computed under *McGarry* based on an application of custody credits to the entire fine, including penalty assessments, required defendants to serve significantly more time in custody or perform more community service to satisfy their fines, and to be awarded much smaller reductions in their fines based on time they already served in custody.[11]

Against this backdrop, the People argue the amendments in AB 2839 should not apply retroactively to defendants, even though they received greater sentences than would have been required by the Legislature in the amended statutes. The People are confronted with a very tough row to hoe.

"""""Under the California Constitution, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment except where the statute is passed as an urgency measure and becomes effective sooner. [Citation.]""" [Citation.]" (*People v. Douglas M.* (2013) 220 Cal.App.4th 1068, 1075, fn. 5.) AB 2839 was not urgency legislation. Also in favor of the People's argument is the presumption that statutes are applied only prospectively. (See § 3 ["No part of [the Code] is retroactive, unless expressly so declared"].)

But, there is no ironclad bar to a court construing a law to apply retroactively to cases, as the ones herein, which were not final on appeal at the time the ameliorative legislation was approved. Because "the Legislature did not expressly declare whether [the statutory scheme in sections 1205 and 2900.5] was to operate prospectively or retroactively[,] [w]e . . . proceed to consider whether it is 'very clear from extrinsic sources' [citation] . . . that the Legislature intended the amendment[s] to operate retroactively." (*People v. Brown* (2012) 54 Cal.4th 314, 320 (*Brown*).) The rule in *Estrada*, *supra*, 63 Cal.2d 740, that the Legislature intends

---

[11]The precise extent of the reductions yielded can be determined by applying *McGarry*'s formula. (See *McGarry*, *supra*, 96 Cal.App.4th at pp. 648-650.)

reductions in punishment to apply retroactively, also must be considered in deciding the temporal application of AB 2839.

 (i)  Clarity of legislative history

 The extrinsic sources very clearly indicate the Legislature's intent vis-à-vis retroactivity. Retroactivity of AB 2839 was expected by the Legislature.

 AB 2839 was first introduced in the Legislature on April 13, 2016, less than four months after the AB 1375 increase in the custody credit to $125 went into effect, and was passed unanimously. The sheer rapidity in the reaction by the Legislature to what was transpiring in the wake of AB 1375, and the unanimity of that reaction, are probative as to its intent on whether the law should be immediately applied to benefit defendants.

 The statement by the author of AB 2839 in the bill analyses expressed dismay at the current state of affairs and the way courts were applying AB 1375. "'Last year, the Legislature unanimously approved AB 1375 to help address the excesses of the "debt trap" faced by many defendant [*sic*] facing small fines in criminal court. The bill called for an inflationary adjustment from $30 to $125 per day to the rate at which jail time offset assessed fines that the prisoner could not pay. The purpose of the bill was to reduce the time spent in jail by indigent defendants unable to pay small fines. [¶] Unfortunately, in response, some courts have now changed their method of calculating the fines against which the jail time is offset. Where before the offset was applied to the base fine, with penalties and assessments disregarded or reduced, these courts now are applying the credit only after penalties and assessments have been added. The net result in these courts is that indigent defendants now end up facing more jail time for the same minor fine, rather than less. [¶] AB 2839 will address this issue by specifying that the credit for jail time is to be applied to the base fine, not to the fine enhanced by penalties and assessments.'" (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2839 (2015-2016 Reg. Sess.) as amended April 13, 2016, pp. 2-3; see also Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2839 (2015-2016 Reg. Sess.) as amended April 13, 2016, p. 4 [same].)

 The sponsor of AB 2839, the Conference of California Bar Associations, provided a statement in support of the legislation which underscored the bill author's sharp disapproval of

how trial courts were interpreting AB 1375. "'AB 2839 is follow-up legislation to AB 1375 (Thurmond) of 2015, reaffirming that bill's intent and invalidating its mis-implementation by at least one court. . . . [¶] For forty years, California courts have calculated jail time against the base fine, with penalties and assessments reduced proportionately. Unfortunately, in response to the change made by AB 1375, some courts have changed their method of calculating the fines against which the jail time is applied, applying the credit only after penalties and assessments have been added. In these courts, indigent defendants now face more jail time for the same minor fine than they did before AB 1375, despite the legislation's clear intent. This also increases jail overcrowding for minor offenses, and costs counties more money in incarceration costs. [¶] AB 2839 would restore the "normal" calculation method in place for the forty years before the passage of AB 1375, thereby ensuring that the Legislature's intent in enacting the bill is given effect, jail overcrowding is reduced, and local costs are kept low.'" (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2839 (2015-2016 Reg. Sess.) as amended April 13, 2016, pp. 4-5; see also Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2839 (2015-2016 Reg. Sess.) as amended April 13, 2016, p. 6 [same].)

The analyses of AB 2839 indicate the Legislature determined its intent had been misconstrued by some trial courts, and it sought to rectify that. Allowing trial courts to continue sentencing defendants to greater punishment than what the Legislature intended until January 1, 2017, would be antithetical to the Legislature's purpose of helping address defendants' "debt trap" and ensuring "jail overcrowding is reduced, and local costs are kept low."

      (ii)     The *Estrada* rule

The California Supreme Court in *Estrada* held, "When the Legislature amends a statute so as to lessen the punishment [without clearly specifying the statute should have only prospective operation] it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Estrada*, *supra*, 63 Cal.2d at p. 745.)

18

In applying the *Estrada* rule in the current context, we are guided by the Court of Appeal's resolution of an issue pertaining to section 2900.5 in *People v. Hunter* (1977) 68 Cal.App.3d 389 (*Hunter*). The opinion involved the retroactivity of a 1976 amendment to this section, which provided that defendants were entitled to "back time" for presentencing incarceration against a sentence imposed as a condition of probation. *Hunter* first noted in applying *Estrada* that, as in the statutes at issue in the consolidated appeals, the Legislature had not specified in the text of the new law that its amendment was to apply only prospectively. (*Hunter*, *supra*, 68 Cal.App.3d at p. 392; see *People v. Davis* (2016) 246 Cal.App.4th 127, 136 ["*Estrada* becomes relevant only when, as the decision itself acknowledged, the Legislature has been silent about its intent"].)

*Hunter* held, "The 1976 amendment to . . . section 2900.5 must be construed as one lessening punishment, as the term is used in *Estrada*. True, *Estrada* deals with a statute which lessens the maximum sentence for a particular crime while the amendment to section 2900.5 concerns credit against a lesser sentence imposed as a condition of probation. But in the circumstances which we here consider, the distinction is without legal significance." (*Hunter*, *supra*, 68 Cal.App.3d at p. 393; accord, *People v. Sandoval* (1977) 70 Cal.App.3d 73, 87 (*Sandoval*) [holding *Estrada* "require[d] that the 1976 amendment to section 2900.5 be construed as effective to sentences imposed prior to the effective date by judgments not yet final on January 1, 1977"].)

Providing a defendant additional custody credit under section 2900.5 towards a jail sentence imposed as a condition of probation was held by *Hunter* to lessen punishment within the meaning of *Estrada*. So too, the increase in custody credit enacted by AB 2839—by requiring that custody credits be applied to only the base fine in sections 1205 and 2900.5— significantly decreased defendants' punishment within the meaning of *Estrada*.

Contrary to the People's argument on appeal, the California Supreme Court's opinion in *Brown* does not bar retroactivity under *Estrada*. *Brown* considered whether a change in the law pertaining to *conduct* credits should be applied retroactively. (*Brown*, *supra*, 54 Cal.4th at p. 318.) A statute involving such credits, in contrast to the custody credits statutes at issue in this appeal, "[i]nstead of addressing punishment for past criminal conduct, . . . addresses *future*

*conduct* in a custodial setting by providing increased incentives for good behavior." (*Id*. at p. 325, italics in original.)

*Brown* specifically noted that "[c]ases involving custody credit"—citing, among other cases, the Court of Appeal opinions in *Hunter* and *Sandoval*—"may properly be distinguished as irrelevant" to the resolution of whether *Estrada* applied to the conduct credits statute. (*Brown*, *supra*, 54 Cal.4th at p. 326, italics omitted, fn. omitted.) As *Brown* explained, "Credit for time served is given without regard to behavior, and thus does not implicate the distinction between statutes that provide behavioral incentives (e.g., conduct credits) and statutes that "'mitigat[e] . . . the penalty for a particular crime.'" (*Ibid*., quoting *Estrada*, *supra*, 63 Cal.2d at p. 745.) Since *Brown* did not involve custody credits, its determination that *Estrada* was inapplicable is not controlling. (See *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 ["an opinion is not authority for a proposition not therein considered"]; accord, *People v. Mills* (2012) 55 Cal.4th 663, 680, fn. 12.)[12]

## IV. *DISPOSITION*

The sentences in each of the consolidated cases are reversed. The cases are remanded to the trial courts for recalculation of each defendant's credits consistent with this opinion. In all other respects, the judgments are affirmed.

_____
RICCIARDULLI, Acting P. J.

We concur:

_____
B. JOHNSON, J.

---

[12]In light of our disposition, we do not consider defendants' contentions that the judgments should be reversed because the trial courts failed to ascertain their ability to pay the penalty assessments. We likewise do not decide whether reversal would have been warranted based on arguments that the trial courts failed to determine if the payment of the penalty assessments "would work a hardship on the person convicted or his or her immediate family" pursuant to section 1464, subdivision (d).

_____
DYMANT, J.*


*Retired judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.

21

Trial Court Bench Officers (seven consolidated cases):

Judge Jon R. Takasugi
BR 052691, *People v. Juan Carranza*, Alhambra Trial Court (No. 5AH04272)

Commissioner Sheryl Beasley
BR 052709, *People v. Oscar Tapia*, Downey Trial Court (No. 5DY07822)

Judge Carol W. Eswick
BR 052764, *People v. Leand You*, Alhambra Trial Court (No. 5AH04642)
BR 052828, *People v. Daniel Lebron*, Alhambra Trial Court (No. 6AM00572)
BR 052829, *People v. Jaime Casas*, Alhambra Trial Court (No. 6AM00662)
BR 052846, *People v. William Medina*, Alhambra Trial Court (No. 6AM01130)
BR 052853, *People v. Ruby Navarro*, Alhambra Trial Court (No. 6AM00921)

Attorneys:

For Plaintiff/Respondent:

    Jackie Lacey, District Attorney of Los Angeles County
    Roberta T. Schwartz, Deputy District Attorney
    Phyllis C. Asayama, Deputy District Attorney
    320 West Temple Street, Room 540
    Los Angeles, CA   90012

For Defendants/Appellants:

| | |
|---|---|
| Eric Cioffi, Esq.<br>1581 Maidens Road<br>Maiden, VA   23102 | BR 052691, *People v. Carranza* |
| Richard Scott Lysle, Esq.<br>475 Washington Boulevard, Suite 200<br>Marina del Rey, CA   90292 | BR 052709, *People v. Tapia* |
| Andrea Ilana Keith, Esq.<br>Post Office Box 4587<br>Thousand Oaks, CA   91359 | BR 052764, *People v. You* |
| Donna L. Jones, Esq.<br>Post Office Box 33201<br>Long Beach, CA   90832 | BR 052828, *People. Lebron* |
| Kenneth Neil Hamilton, Esq.<br>5740 Ralston Street, Suite 300<br>Ventura, CA   93003 | BR 052829, *People v. Casas* |
| Geoffrey Ojo, Esq.<br>5777 West Century Boulevard, Suite 750<br>Los Angeles, CA   90045 | BR 052846, *People v. Medina* |
| Roya Milder, Esq.<br>639 North Las Palmas Avenue<br>Los Angeles, CA   90004 | BR 052853, *People v. Navarro* |